No. 26-____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

In re UNITED STATES OF AMERICA,

Petitioner.

PETITION FOR A WRIT OF MANDAMUS TO THE
UNITED STATES COURT OF INTERNATIONAL TRADE

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

BRAD HINSHELWOOD
DANIEL WINIK
DOUGLAS C. DREIER
SOPHIA SHAMS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7213*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2495*

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ................................................................ 1

STATEMENT .................................................................................................. 6

    A.    The Supreme Court's *Learning Resources* Decision and CBP's Response .......................................................................... 6

    B.    A Single CIT Judge Sua Sponte Issues Multiple Universal Injunctions, Then Stays Those Orders ....................... 10

    C.    The CIT Judge—Again Acting Sua Sponte—Orders Live Testimony by the Commissioner of Customs and Border Protection .................................................................... 15

ARGUMENT ................................................................................................. 17

    A.    Courts Lack Authority To Compel High-Ranking Officials To Testify Absent Extraordinary Circumstances .................................................................... 20

    B.    No "Extraordinary Circumstances" Justify Compelled Testimony by the CBP Commissioner, and Mandamus Is Warranted ...................................................................... 22

CONCLUSION .............................................................................................. 34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

## INTRODUCTION AND SUMMARY

The United States respectfully requests that this Court issue a writ of mandamus to block the compelled live testimony of Rodney S. Scott, the Senate-confirmed Commissioner of U.S. Customs and Border Protection (CBP). Although no party requested it, a judge of the Court of International Trade (CIT) has directed Commissioner Scott to appear and testify at a June 9 hearing in New York City. The court rejected, without explanation, the government's offer to provide live testimony instead from other senior CBP officials, including Commissioner Scott's top deputy for international trade. And the court did not identify any information necessary to its consideration of the case that only Commissioner Scott could supply. The court simply wants Commissioner Scott to appear in the courtroom in person. Under well-settled principles, a writ of mandamus is clearly warranted. *See* 28 U.S.C. § 1651; Fed. R. App. P. 21; *In re United States*, 542 F. App'x 944 (Fed. Cir. 2013) (unpublished) (granting mandamus to block deposition of Chair of Federal Reserve).

This case concerns the process of refunding tariffs that this Court and the Supreme Court held invalid under the International Emergency Economic Powers Act (IEEPA). The government has made herculean efforts to

refund those tariffs, with interest. CBP has developed and launched an entirely new system to process IEEPA tariff refunds much more quickly than would otherwise have been possible, and refunds worth more than $20 billion (including interest) have already been fully processed by CBP and certified for disbursement. A34.

CBP has done all this in the shadow of multiple manifestly unlawful universal injunctions entered by Senior Judge Eaton, to whom the CIT transferred all IEEPA refund cases. Those injunctions were entered sua sponte in a handful of discrete cases brought by individual importers, none of which had a pending motion for preliminary injunctive relief—let alone universal injunctive relief. Although the injunctions do not purport to be final judgments, they are effectively dispositive—not just of the particular cases in which they were entered but of the entire universe of IEEPA refund claims—by requiring the government to pay all of the IEEPA refunds, to all importers, all at once. Those injunctions are plainly unlawful under *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), and defy this Court's en banc ruling in *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025) (per curiam). The government has appealed the injunctions contemporaneously with the filing of this petition.

As relevant here, the CIT's sua sponte universal injunctions are the subject of the upcoming June 9 hearing at which the court has compelled Commissioner Scott's attendance.  Judge Eaton initially stayed immediate compliance with his universal injunctions at the government's urging while CBP devised a system for processing refunds.  Although CBP has already refunded billions in IEEPA tariffs, barely three months after the Supreme Court's decision, the CIT has threatened to lift its stay of the universal injunctions.  Deciding whether to do so is the ostensible purpose of the hearing at which Judge Eaton has, sua sponte, ordered Commissioner Scott to appear and testify.[1]

That order is a gross abuse of discretion and warrants an exercise of this Court's mandamus authority.  The law is unmistakably clear:  as a matter of respect for the autonomy of the Executive Branch and practical necessity to the operation of government, high-ranking executive officials like Commissioner Scott may be compelled to testify in civil litigation, if at all, only when they possess first-hand knowledge of essential facts that cannot be elicited from other sources.  There is no question that Commissioner Scott

---

[1] If the CIT lifts its stay of the universal injunctions, the United States will immediately seek a stay pending appeal from this Court.

is a high-ranking official covered by that doctrine.  Yet the CIT did not purport to identify any factual question — let alone any fact necessary to its decision whether to lift the stay — on which the Commissioner possesses firsthand knowledge not available from others.  Nor, for that matter, did the court explain why live testimony from CBP leadership was necessary at all.  No party requested the testimony or suggested any reason it was needed.  And that is hardly a surprise:  none of the specific importer plaintiffs in the cases the CIT selected sought preliminary injunctive relief after the Supreme Court's decision, and none has ever suggested that anything about their actual claims for refunds turns on the information the CIT seeks.

The government nevertheless offered to provide live testimony from Susan Thomas, CBP's Executive Assistant Commissioner for Trade — *i.e.*, Commissioner Scott's top deputy for trade issues.  Ms. Thomas attested that she "oversee[s] the development and implementation" of the system for processing IEEPA refunds, is "the senior-most knowledgeable person within CBP on the topics the Court wishes to discuss," and is available to testify on June 9.  A14.  Alternatively, the government offered to provide live testimony from Brandon Lord, the Executive Director of the Trade Programs Directorate within CBP's Office of Trade.  Mr. Lord has directly supervised the

creation of the relevant CBP system and has submitted numerous declarations in the litigation already documenting the system's development, capabilities, and current status.

On Friday last week, however, the court summarily denied the government's motion to substitute those witnesses. A1-3. The court did not explain why either witness would be insufficient for the court's purposes. It did not point to any case in which this Court or any other court of appeals has allowed a high-ranking executive official to be compelled to testify on a similarly thin showing. The court failed even to acknowledge the relevant legal test—discussed at length in this Court's decision in *In re United States*, 542 F. App'x 944, which the government cited—or explain why it was even colorably lawful under that test to compel Commissioner Scott's testimony. The court merely asserted that it was "fully aware of … the separation of powers concerns that are potentially raised when an executive official is directed to appear in court" and stated that, "[t]o the extent such concerns exist here, the court has taken these matters into account in denying the Government's motion." A2-3.

It is hard to imagine a clearer case for mandamus. The trial court clearly and indisputably has no lawful basis to compel the Senate-confirmed

- 5 -

Commissioner of U.S. Customs and Border Protection to appear personally in its New York courtroom, the United States has no other adequate means of obtaining relief, and mandamus is clearly appropriate to remedy the trial court's clear abuse of discretion.

Given the June 9 hearing date and the burdens associated with preparing the Commissioner for the hearing, whether or not he is ultimately required to appear, the government is filing an emergency motion to stay—pending resolution of this mandamus petition—the CIT's order that the Commissioner appear at the hearing. A stay would leave the CIT free to hold the hearing with other witnesses testifying if it wishes. As the motion explains, we respectfully request that the Court grant at least an administrative stay no later than **this Friday, June 5**, in order to leave sufficient time for the Solicitor General to consider whether to seek relief from the Supreme Court if necessary.

## STATEMENT

### A.    The Supreme Court's *Learning Resources* Decision and CBP's Response

This case arises from the aftermath of the Supreme Court's decision in *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628 (2026), in which the Court

held that IEEPA does not authorize the President to impose tariffs. Some importers had filed suit at the CIT before that decision, seeking refunds of the IEEPA tariffs, and others filed suit after the decision.

To understand the refund process, it is helpful to understand how the processing of a particular importer's entries generally works (in slightly simplified form). An importer seeking to bring goods into the United States, or its designated customs broker, must generally file through the Automated Commercial Environment (ACE) system an entry with detailed information relevant to calculating any duties owed and paying initial estimated duties. A59-60. CBP may conduct an initial review of the classification of the imported article or articles under the Harmonized Tariff Schedule of the United States. A59-61. The import entry then remains open for months, during which CBP has the discretion to conduct any inquiry required to finalize the determination of the duties along with applicable import taxes and fees. *See* A62.

The point at which CBP concludes that process and finalizes the entry is known as "liquidation." 19 C.F.R. § 159.1. Liquidation ordinarily must be completed within a year of entry (or else entries are deemed liquidated in the amounts "asserted by the importer," 19 U.S.C. § 1504(a)(1); 19 C.F.R.

§ 159.11(a)), but CBP can extend that timeline for up to three years in one-year increments, 19 U.S.C. § 1504(b); 19 C.F.R. § 159.12(a), (d), (e).  Ordinarily, liquidation is the point at which CBP refunds any estimated duties the importer has previously paid that have been determined to be improper.  19 U.S.C. § 1505(b).  CBP may issue refunds (known as "administrative refunds") before liquidation, but that is generally a manual and labor-intensive process.  *See* A51.

Once liquidation is complete, the importer can file an administrative protest of CBP's determination under 19 U.S.C. § 1514.  Protests must be filed "within 180 days after" liquidation.  19 U.S.C. § 1514(c)(3).  Liquidation becomes final if no protest is filed within that timeframe.  *Id.* § 1514(a).  If CBP denies a protest, then the importer who filed it can challenge CBP's decision at the CIT under 28 U.S.C. § 1581(a).  Alternatively, an importer can invoke the CIT's "residual jurisdiction under § 1581(i)" if the relief under § 1581(a) is unavailable or "manifestly inadequate" — that is, "'an exercise in futility.'" *ARP Materials, Inc. v. United States*, 47 F.4th 1370, 1379 (Fed. Cir. 2022).  The residual provision gives the CIT exclusive jurisdiction over suits "aris[ing] out of any law of the United States providing for … tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the

raising of revenue" or the "administration and enforcement" of such tariffs, duties, fees, or taxes.  28 U.S.C. § 1581(i).

Under the ordinary system, where CBP usually refunds duties at liquidation within a year from the date of entry, it would have been impossible for CBP to refund the IEEPA tariffs quickly.  CBP did not have the technical capability to quickly and efficiently process the volume of refunds at issue and would have been required to process the liquidation of each entry individually.  *See* A64-68.  CBP therefore developed a new functionality within its ACE system, known as the Consolidated Administration and Process of Entries (CAPE), to process refunds of IEEPA tariffs as quickly as possible. Phase 1 of CAPE is limited to "entries that are either unliquidated or up to 80 days past their liquidation date.  Following CBP review, these entries will be liquidated or reliquidated and refunds will be issued."  CBP, *Consolidated Administration and Processing of Entries (CAPE) Phase 1*, at 1 (Apr. 8, 2026), https://perma.cc/3X6U-TY3F.  CBP will move to other types of entries in later phases of CAPE.

Phase 1 of CAPE "became available for use by importers and their brokers … on Monday April 20, 2026."  A33.  It has been used more than 150,000 times since then, for submissions covering more than 15 million entries

totaling $85 billion, and refunds worth more than $20 billion (including interest) have been approved.  A33-34.

### B.   A Single CIT Judge Sua Sponte Issues Multiple Universal Injunctions, Then Stays Those Orders

**1.**    A week after *Learning Resources*, importer Atmus Filtration brought suit in the CIT and sought a temporary restraining order (TRO) to "suspend liquidation" of its "unliquidated entries" on which IEEPA tariffs had been imposed.  Complaint at 2, *Atmus Filtration, Inc. v. United States*, No. 26-cv-1259 (Ct. Int'l Trade Feb. 27, 2026), Dkt. 2; Proposed Order at 1, *Atmus*, No. 26-cv-1259 (Feb. 27, 2026), Dkt. 3.

Senior Judge Eaton of the CIT ordered the government to respond and scheduled a hearing on Atmus's motion.  In response, the government explained that Atmus could not establish irreparable harm because the government did not dispute the CIT's "authority to order reliquidation where an IEEPA tariff has been wrongly imposed and the importer of record is not time barred to contest the liquidation," and because the CIT itself "has concluded that it has the authority to order reliquidation of non-time-barred entries of IEEPA tariffs."  Order at 5, *Atmus*, No. 26-cv-1259 (Mar. 2, 2026), Dkt. 14.  The government and Atmus then stipulated that the CIT "possesses

authority to order reliquidation of entries assessed with duties imposed under the invalidated IEEPA measures, should such relief be warranted." A110. And "in light of" the stipulation, Atmus filed a "[n]otice" that it was "withdraw[ing]" its TRO motion. A112.

Judge Eaton nonetheless proceeded with the hearing and refused to allow Atmus to withdraw its TRO motion. While declaring that he would be "the only judge who [would] hear cases pertaining to the refund of IEEPA duties," the judge issued relief not even requested in Atmus's withdrawn TRO motion: a universal injunction, formally preliminary but in effect dispositive, directing CBP to "liquidate … without regard to the IEEPA duties" "any and all unliquidated entries that were entered subject to the IEEPA duties," and "reliquidate[] without regard to IEEPA duties" "[a]ny liquidated entries for which liquidation is not final." *Atmus Filtration, Inc. v. United States*, 2026 WL 616128, at \*1-2 (Ct. Int'l Trade Mar. 4, 2026). The CIT did not consider any of the equitable factors for injunctive relief.

Without briefing on the lawfulness or appropriateness of universal relief, the CIT concluded that it was not bound by the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), that universal injunctions are impermissible. According to the CIT, "[t]he [Supreme] Court's

- 11 -

discussion of 'whether, under the Judiciary Act of 1789, federal courts have equitable authority to issue universal injunctions' does not constitute a legal direction to [the CIT]," which has been "provided with national geographic jurisdiction" and has been "given exclusive subject matter jurisdiction to hear claims like those presented in" the IEEPA refund cases.   2026 WL 616128, at *1.

Two days later, the government filed a declaration from Brandon Lord, Executive Director of the Trade Programs Directorate within CBP's Office of Trade, explaining that CBP's systems would not permit immediate compliance with the order.  A58-70.  CBP explained that it was planning to develop a new ACE functionality (the CAPE system, discussed above) for the purpose of processing IEEPA tariff refunds.  A68-69.  In response to that declaration and a nonpublic, off-the-record conference held the same day, the CIT "suspended" its order "to the extent that it directs immediate compliance." *Atmus Filtration, Inc. v. United States*, 2026 WL 661636, at *1 (Ct. Int'l Trade Mar. 6, 2026).

The court then proceeded to hold, sua sponte, a series of off-the-record "settlement conferences," before each of which it requested updates from CBP on the development of the refund system.  *See* A93-94, 95-96, 97, 98-99,

100-101.  Those updates were provided in additional declarations by Executive Director Lord.  After several such conferences, the court amended its (still suspended) injunction so that, for the first time, it required the government to "reliquidate[] without regard to the IEEPA duties" "[a]ny liquidated entries for which liquidation is *final*."  A18-19 (emphasis added).

On April 6, 2026, Atmus filed a notice of voluntary dismissal.  The CIT entered an order dismissing *Atmus* on April 8.

**2.**     Several weeks before the *Atmus* dismissal, the CIT's chief judge assigned all of the IEEPA-refund cases to Judge Eaton, who had handled *Atmus*.  A114-117.

On the day after Atmus dismissed its case, Judge Eaton chose another case, brought by importer Euro-Notions Florida, without explanation from among the hundreds of refund cases assigned to him.  Although Euro-Notions had never filed a motion for any sort of preliminary injunctive relief, the CIT sua sponte issued an order lifting the stay of the litigation, A109, and then entered — again, sua sponte and without notice to the parties, much less briefing — the same universal injunction previously entered in *Atmus*, and again stayed its immediate effect.  A20-22.

The CIT then continued the series of nonpublic, off-the-record conferences, preceded by requests to CBP for updates on the development of its refund system, that it had commenced in *Atmus*.  A36-37, 41-42, 46-47, 102, 108.  But the court apparently decided that it should include representatives of other importers in the conferences.  To effectuate that objective, the court issued orders in three additional cases.  One order directed counsel in the three cases to designate representatives to attend the next *Euro-Notions* conference.  A105-108.  The other imposed and stayed, in each of those cases, the same universal injunction previously imposed in *Euro-Notions*, and before that in *Atmus*.  A103-104.  The court again did all of this sua sponte.

One of the three additional cases was *V.O.S. Selections* — in which, after the Supreme Court issued its decision, the plaintiffs had filed a motion for a permanent injunction that expressly did not "seek to defend the nationwide scope of the injunction" the CIT had originally entered in that case, and instead sought an injunction specific to their own refunds.  A128.  The CIT denied that motion, without explanation, shortly after entering the universal injunction it had entered in *Atmus* and *Euro-Notions*.  The other two cases were *AGS Co. Automotive Solutions v. CBP*, No. 25-cv-255; and *Grant & Bowman, Inc. v. CBP*, No. 25-cv-689.

- 14 -

In the ensuing weeks, the government complied with the CIT's demands in *Euro-Notions*, with the CIT periodically ordering additional status reports and holding further off-the-record "settlement conferences."  A36-37, 41-42, 46-47, 102.  The government submitted numerous additional declarations from Executive Director Lord, describing the status of CBP's processing of the IEEPA refunds and the development of the CAPE system for ensuring the efficient and effective processing of those refunds.  A32-35, 38-40, 43-45, 48-52, 54-56, 58-70, 72-77, 79-82, 84-92

### C.    The CIT Judge—Again Acting Sua Sponte—Orders Live Testimony by the Commissioner of Customs and Border Protection

On May 27, following another off-the-record "settlement conference," the CIT—again acting sua sponte—entered an order in *V.O.S. Selections* lifting the stay of the litigation, directing the parties to show cause why the court should not lift the suspension of immediate compliance with its injunction, ordering the parties to file briefs on that question by June 4, and ordering the CBP Commissioner to appear at a June 9 hearing in New York City "to answer the court's questions as to the anticipated timing of Customs' compliance with the court's order."  A16-17.

On May 29, the government moved to amend the CIT's order to substitute Susan Thomas—CBP's Executive Assistant Commissioner for Trade, who reports directly to the Commissioner—or Executive Director Lord to appear, instead of the Commissioner, at the June 9 hearing. A4-11. The government explained that the Commissioner "is not … the official with the most direct first-hand knowledge of the answers to the Court's questions" and that Executive Assistant Commissioner Thomas or Executive Director Lord would be best positioned to provide the information the CIT is seeking. A8-10. The government further provided a declaration from Executive Assistant Commissioner Thomas that outlined her personal knowledge and explained that she is the "senior-most knowledgeable person within CBP on the topics the Court wishes to discuss." A14.

The CIT denied the motion the same day. A1-3. The court did not acknowledge the government's offer of testimony from Executive Assistant Commissioner Thomas or Executive Director Lord or explain why their testimony would be inadequate. Nor did it cite or engage with the caselaw from this Court and others explaining that high-ranking government officials, like the CBP Commissioner, should not be compelled to testify absent extraordinary circumstances. The court acknowledged that CBP was

processing refund requests through CAPE and that "billions of dollars of unlawfully collected IEEPA duties have been returned to importers, and billions more are being processed," but stated that "there are billions of dollars of duties that currently cannot be processed by the CAPE program but still must be refunded" and that it believed that "most of the refunds that have been processed so far have gone to large importers, not small." A2. The court stated that CBP "has not proposed a method for complying with the court's order to refund all of the unlawfully collected duties, including those owing to small importers," and that "Commissioner Scott's testimony is necessary to ascertain if it is the Government's policy to return all of the unlawfully collected duties either by complying with the court's order, or by some other means." A2. And while the court acknowledged "the separation of powers concerns that are potentially raised when an executive official is directed to appear in court," it dismissed those concerns, merely stating that "[t]o the extent" those concerns exist here, "the court has taken these matters into account in denying the Government's motion." A2-3.

## ARGUMENT

Mandamus relief is warranted where the applicant has "no other adequate means" to obtain redress, the applicant shows a "clear and

indisputable" right to relief, and relief "is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-381 (2004) (quotation marks omitted).

Mandamus is amply warranted here. The CIT's order far exceeds the recognized bounds of compelled testimony from high-ranking Executive Branch officials—bounds the CIT nowhere addressed. Courts, including this Court, have repeatedly made clear that the testimony of a high-ranking official cannot be compelled except in "extraordinary circumstances," where the official possesses "first-hand knowledge" that cannot be provided by "other persons," *In re United States*, 542 F. App'x 944, 948 (Fed. Cir. 2013) (unpublished) (quotation marks omitted), and that is "essential to the case," *In re U.S. Dep't of Educ.*, 25 F.4th 692, 703 (9th Cir. 2022). And every court of appeals to consider the question has concluded that mandamus is appropriate to enforce that rule. This Court, for example, has granted mandamus relief from an order compelling the deposition of the Chair of the Federal Reserve, finding no extraordinary circumstances to justify the intrusion and explaining that mandamus was appropriate because "[t]he right to not appear … would be lost if review was denied until final judgment" and requiring an official to go into contempt and appeal would have "serious

repercussions for the relationship between different branches of government." *In re United States*, 542 F. App'x at 947-948.

The "extraordinary circumstances" standard is not remotely met here. No party has suggested that the CBP Commissioner has unique and essential firsthand knowledge relevant to the issue on which the CIT has ordered his testimony—specifically, the issue of when CBP could fully comply with the universal injunctions the CIT has entered. Nor did the CIT's sua sponte order, or its subsequent denial of the government's motion to substitute other witnesses, identify any such knowledge. The government has offered for testimony multiple senior officials who do have such knowledge, including one who has routinely provided declarations in this litigation detailing CBP's efforts. But the CIT has refused to accept their testimony and relieve the Commissioner of the obligation to testify.

That alone warrants mandamus. But if more were needed, the CIT has never suggested that the Commissioner's testimony is in any sense "essential" to resolving the refund claims of the specific importer plaintiffs in *V.O.S. Selections*. The court's order compelling Commissioner Scott's appearance was entered in a single case, one of the four the court selected for sua sponte relief. A17. Yet the court's order denying the government's

motion to substitute a different witness makes clear that the CIT's interest in the Commissioner's testimony has no relationship to the specific refund claims in that case or in any of the four cases in which the court has entered a universal injunction. Rather, the court wishes to explore with the Commissioner its concerns about "small importers" or refunds that the CAPE system cannot process. A2. Whatever reason the CIT had for taking over *V.O.S. Selections* for this purpose, it is plain that the Commissioner's compelled testimony is not "essential" to deciding the actual claims in *V.O.S. Selections* or the other pending cases in which the CIT has entered a universal injunction. Mandamus is clearly warranted.

A.    **Courts Lack Authority To Compel High-Ranking Officials To Testify Absent Extraordinary Circumstances**

This Court and others have long held that high-ranking officials cannot be compelled to testify absent a showing of "extraordinary circumstances" or "special need." *In re United States*, 542 F. App'x at 948 (quoting *In re United States* (*Jackson*), 624 F.3d 1368, 1372 (11th Cir. 2010)); *see also, e.g.*, *In re Musk*, 169 F.4th 445, 448 (4th Cir. 2026). That is because "the compelled appearance of a high-ranking officer of the executive branch in a judicial proceeding implicates the separation of powers," *Jackson*, 624 F.3d at 1372,

- 20 -

and because "[t]he duties of high-ranking executive officers should not be interrupted by judicial demands for information that could be obtained elsewhere," *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (per curiam).  This Court has repeatedly recognized these concerns.  *In re United States*, 542 F. App'x at 947; *see also NEC Corp. v. United States*, 151 F.3d 1361, 1375 (Fed. Cir. 1998) (affirming decision to permit officials to testify in writing).  Given these serious concerns, a trial court "should rarely, if ever, compel the attendance of a high-ranking official in a judicial proceeding." *Jackson*, 624 F.3d at 1376.

To show the "extraordinary circumstances" required to justify the testimony of a high-ranking official, the party seeking testimony must show that the official has "first-hand knowledge" that cannot be provided by "other persons," *In re United States*, 542 F. App'x at 948 (quotation marks omitted), and moreover that such unique knowledge is "essential to the case," *In re U.S. Dep't of Educ.*, 25 F.4th at 703.  Given that imposing standard, it is no surprise that courts of appeals have routinely issued mandamus to block orders requiring testimony from high-ranking officials after concluding that no extraordinary circumstances justified the demands. *See, e.g., In re Cheney*, 544 F.3d at 314 (Vice President's Chief of Staff); *In re Musk*, 169 F.4th at 448 (Department of Government Efficiency officials); *Jackson*, 624

F.3d at 1372-1373 (EPA Administrator); *In re Paxton*, 60 F.4th 252, 258-259 (5th Cir. 2023) (Texas Attorney General); *In re U.S. Dep't of Educ.*, 25 F.4th at 692 (former Secretary of Education); *In re Clinton*, 973 F.3d 106, 121 (D.C. Cir. 2020) (former Secretary of State).

## B.    No "Extraordinary Circumstances" Justify Compelled Testimony by the CBP Commissioner, and Mandamus Is Warranted

Under these standards, mandamus is amply warranted here. Commissioner Scott is doubtless a high-ranking government official, and no extraordinary circumstances remotely justify his compelled testimony.

**1.** Commissioner Scott is clearly a high-ranking government official. He is a Senate-confirmed official in charge of CBP, an agency within the Department of Homeland Security (DHS). 6 U.S.C. § 211(a)-(b). In that position, Commissioner Scott is statutorily entrusted with numerous important duties, including "coordinat[ing] and integrat[ing]" the agency's "security, trade facilitation, and trade enforcement functions"; "direct[ing] and administer[ing] the commercial operations" of CBP and "the enforcement of the customs and trade laws of the United States"; "detect[ing], respond[ing] to, and interdict[ing] terrorists, drug smugglers and traffickers, human smugglers and traffickers, and other persons who may undermine the security of

the United States"; and "safeguard[ing] the borders of the United States to protect against the entry of dangerous goods." *Id.* § 211(c).

Compelling the Commissioner to take time away from those duties to attend a hearing and provide testimony "creates all the risks of disrupting significant ongoing government activities" that this Court and others have recognized warrant mandamus. *In re United States*, 542 F. App'x at 949; *see, e.g.*, *Jackson*, 624 F.3d at 1372; *In re Cheney*, 544 F.3d at 314. And Commissioner Scott's broad responsibilities are no less significant than those of many other officials whose testimony other courts of appeals have granted mandamus to block. *See, e.g.*, *In re Commodity Futures Trading Comm'n*, 941 F.3d 869, 873 (7th Cir. 2019) (Commodity Futures Trading Commission Chairman, Commissioners, and staff); *In re United States* (*Holder*), 197 F.3d 310, 314 (8th Cir. 1999) (Deputy Attorney General); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (three Directors of the Federal Deposit Insurance Corporation); *In re United States*, 985 F.2d 510, 512-513 (11th Cir. 1993) (per curiam) (FDA Commissioner); *In re Office of Inspector Gen., R.R. Ret. Bd.*, 933 F.2d 276, 277-278 (5th Cir. 1991) (per curiam) (Inspector General of Railroad Retirement Board); *Simplex Time Recorder Co. v. Secretary of Lab.*, 766 F.2d 575, 586-587

(D.C. Cir. 1985) (Regional Administrator of the Occupational Safety and Health Administration, among others).

Indeed, just four years ago, the Fifth Circuit stayed an order requiring testimony from the Surgeon General and the Director of the Cybersecurity and Infrastructure Security Agency, another component of DHS. *In re Murthy*, 2022 U.S. App. LEXIS 38050, at *4 (5th Cir. Nov. 21, 2022) (per curiam). And mere months ago, the Seventh Circuit granted mandamus to stop the testimony of a lower-ranking CBP official, a Chief Patrol Agent of the Border Patrol. *In re Noem*, 2025 U.S. App. LEXIS 35274, at *2-3 (7th Cir. Oct. 31, 2025); *see* 6 U.S.C. § 211(e)(1) (establishing the Border Patrol "in U.S. Customs and Border Protection"). There can thus be no serious dispute that Commissioner Scott qualifies as a high-ranking official whose testimony could be compelled only on a showing of extraordinary circumstances.

**2.** Extraordinary circumstances warranting the Commissioner's testimony are not remotely present here. The CIT stated that it sought an official to testify "to answer the court's questions as to the anticipated timing of Customs' compliance with the court's" universal injunction. A17.

Neither the CIT's sua sponte order compelling the Commissioner's testimony nor its order denying the motion to substitute witnesses

acknowledged the "extraordinary circumstances" standard, much less attempted to explain why such circumstances exist in this case. Neither order engaged with the myriad cases — cited in the government's motion — making clear that such testimony cannot be compelled based on a mere desire to have high-ranking officials appear in court. Nor did the CIT purport to identify any factual question relevant to its determination about whether to lift the stays on which the Commissioner possesses firsthand knowledge not available from others.

Indeed, the CIT did not even bother to engage with the government's offer of alternative witnesses or explain why their testimony would be insufficient. CBP expressed its willingness to provide live testimony from Susan Thomas, CBP's Executive Assistant Commissioner for Trade — Commissioner Scott's top deputy for trade issues. Executive Assistant Commissioner Thomas has attested that she reports directly to the Commissioner, "oversee[s] the development and implementation" of the system for processing IEEPA refunds, is "the senior-most knowledgeable person within CBP on the topics the Court wishes to discuss," and is available to testify on June 9. A13-14. The CIT could not properly reject without explanation an

- 25 -

offer of live testimony from the Commissioner's top deputy with firsthand knowledge of the matters at issue here.

Nor did the CIT acknowledge CBP's offer to produce Executive Director Lord, who "lead[s] the administration of priority international trade issues," including the implementation of the IEEPA tariffs, A49, and on whom the CIT has relied for months to provide regular updates regarding CBP's refund efforts. Since early March, Mr. Lord has signed nine declarations for Judge Eaton. *See* A32-35, 38-40, 43-45, 48-52, 54-56, 58-70, 72-77, 79-82, 84-92. His initial declaration in *Atmus* explained why immediate compliance with the CIT's universal injunction was infeasible and detailed CBP's plans for addressing refunds for IEEPA duties. A62-69. His subsequent declarations have outlined in detail CBP's development and implementation of CAPE, the system for issuing appropriate refunds of IEEPA duties. A32-35, 38-40, 43-45, 48-52. And Mr. Lord's most recent declaration—filed the day before the CIT's order directing Commissioner Scott's testimony—detailed the remarkable progress CBP has made in addressing requests for refunds of IEEPA duties in roughly the first month of the CAPE system, including processing more than 108,000 submissions from importers and brokers, liquidating or reliquidating more than 8.5 million entries without IEEPA duties,

and certifying more than $20 billion in refunds (including interest) for disbursement.   A33-34.   The CIT's manifest familiarity with Mr. Lord's firsthand knowledge of the refund process makes the court's total silence about an offer of Mr. Lord's testimony all the more remarkable.

To the extent the CIT's order rejecting the motion to substitute offered any rationale at all, it does not sound in any recognized notion of "extraordinary circumstances."   The court instead wishes to ask the Commissioner about the government's "policy" with respect to refunds—specifically, whether the government intends "to return all of the unlawfully collected duties either by complying with the court's order, or by some other means." A2.  The CIT did not further describe its planned inquiry into "policy," but if the "extraordinary circumstances" test precludes anything, it forbids a court from compelling an agency head to appear at the court's pleasure and explain the agency's "policy" to the court's satisfaction—or, worse, hectoring the agency head over whatever shortcomings the court perceives in that policy.  That prospect underscores the serious "separation of powers" concerns raised by "the compelled appearance of a high-ranking officer of the executive branch in a judicial proceeding." *Jackson*, 624 F.3d at 1372; *see, e.g.*, *In re United States*, 542 F. App'x at 948 (noting rule "'against inquiry into the

mental processes of an agency head'" given "that allowing such examination can disturb the integrity of the administrative process"); *K.C.R. v. County of Los Angeles*, 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014) (noting that testimony from top officials "creates 'a tremendous potential for abuse or harassment'").

Moreover, to the extent the CIT intends its "policy" inquiry to explore whether or how CBP intends to issue refunds to certain categories of importers that paid IEEPA duties, *see* A2 (referring to "billions of dollars of duties that currently cannot be processed by the CAPE program but still must be refunded"), or CBP's position about the legal or administrative avenues that may be available for seeking refunds for different importers, its order denying substitution does not explain why live testimony from the Commissioner himself is necessary to obtain answers to those questions. The CIT offered no reason to expect that Commissioner Scott has unique firsthand knowledge relevant to those questions, or that they could not be answered as well or better by the witnesses CBP has offered or by CBP's counsel. *See In re Paxton*, 60 F.4th at 258 (granting mandamus to block testimony of state attorney general and explaining that "if there is a need to clarify the

- 28 -

[Attorney General's] enforcement policy, a representative can do so on the Attorney General's behalf").

The complete absence of any basis for concluding that Commissioner Scott possesses essential firsthand knowledge that cannot be obtained through other sources underscores that extraordinary circumstances are not present and that mandamus is appropriate. *See, e.g.*, *In re United States*, 542 F. App'x at 948-949; *In re Musk*, 169 F.4th at 448; *Jackson*, 624 F.3d at 1373.

**3.** Although those defects alone are more than sufficient to justify issuing a writ of mandamus, the CIT's order compelling testimony is especially misguided because the testimony sought is in no sense "essential to the case" actually pending before the CIT, *In re U.S. Dep't of Educ.*, 25 F.4th at 703. In four separate cases where individual importers sought refunds of duties they had paid, the CIT entered universal injunctions that directed payment of refunds to non-parties—and did so sua sponte. The CIT then chose one of those cases—*V.O.S. Selections*—in which to issue its order compelling the Commissioner's testimony. A16-17.

That remarkable process sharply departed from ordinary principles of adversarial litigation and, as discussed below, flouted rulings of the Supreme Court and this Court. And critically, the CIT has made no suggestion

- 29 -

that Commissioner Scott's testimony is necessary to resolving the actual claims of the five importer plaintiffs in *V.O.S. Selections*, much less the importer plaintiffs in the three other cases that the CIT commandeered to impose its universal injunctions. Indeed, the CIT has now made explicit that the testimony it seeks has nothing to do with the *V.O.S. Selections* plaintiffs' claims, stating in denying the motion to substitute that it sought information about CBP's intentions regarding "small importers" or others whose duties "currently cannot be processed by the CAPE program." A2. Moreover, the *V.O.S. Selections* plaintiffs never sought this testimony as relevant to their claims; in fact, they stated expressly in their post-*Learning Resources* motion for a permanent injunction that they did not "seek to defend the nationwide scope of the injunction" that they had originally received and that this Court had vacated. A128.

The only possible relevance of Commissioner Scott's testimony—or, indeed, the testimony of *any* CBP official—could thus be to the continued stay of the universal injunction that the CIT imposed in *V.O.S. Selections* and other cases on its own accord. It would be beyond extraordinary to conclude that a court can commandeer cases to impose injunctive relief no party requested, stay that relief when told it is unworkable, and then leverage the

threat of lifting the stay (and thus raising the specter of contempt for non-compliance) into a showing of "extraordinary circumstances" requiring the in-court testimony of a high-ranking official.  Courts are supposed to "'call balls and strikes'; they don't get a turn at bat."  *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (per curiam).

Indeed, that the injunctions here are the product of such manifest error further underscores the absence of any justification for compelling the Commissioner's testimony related to those injunctions.  *See Holder*, 197 F.3d at 314 (plaintiffs could not "obtain discovery from high government officials" because they failed to "show an entitlement to the relief sought in the case"); *see also U.S. Board of Parole v. Merhige*, 487 F.2d 25, 29 (4th Cir. 1973) (granting mandamus to prevent depositions where "the complaint rest[ed] upon" a "tenuous jurisdictional basis").  "Federal courts are not roving commissions, licensed to sally forth each day looking for wrongs to right," but are instead bound to decide issues presented to them by parties.  *Margolin v. National Ass'n of Immigration Judges*, 608 U.S. __, 2026 WL 1463466, at *2 (May 26, 2026) (per curiam) (quotation marks and citation omitted).  The CIT paid no heed to that principle in entering the injunctions here, and there is likewise no

basis for compelling the CBP Commissioner to answer the court's questions related to those injunctions.

Moreover, the Supreme Court has made clear that federal courts lack the equitable power to issue universal injunctions that bind the government to act in a certain way toward the whole world; instead, federal courts are limited to administering "'complete relief *between the parties*.'"  *Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025).  Here, refunds to the *V.O.S. Selections* plaintiffs would provide "complete relief," and there is no dispute that CBP either has refunded the IEEPA duties paid by those plaintiffs, as well as the importer plaintiffs in the other cases in which the CIT sua sponte issued injunctions, or will issue refunds to those parties as additional functionality in CAPE is deployed.  The CIT believed it was exempt from *CASA* because *CASA* discussed the equity power conferred by the Judiciary Act of 1789, while the CIT was created under a different statute and granted exclusive national jurisdiction over particular types of claims.  A24.  But the CIT was expressly created with "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States," 28 U.S.C. § 1585, and thus cannot wield an equitable power to grant universal injunctions that district courts do not possess.  Indeed, this Court recognized *CASA*'s

- 32 -

applicability to the CIT in its en banc decision in *V.O.S. Selections*, holding that "vacatur of the universal injunction" the CIT issued in that case was "warranted based on the Supreme Court's intervening decision" in *CASA*. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1339 (Fed. Cir. 2025).

The government has concurrently appealed the universal preliminary injunctions and, if necessary, will seek a stay from this Court to prevent those deeply flawed injunctions from taking effect. But for purposes of this mandamus petition, it is enough to recognize that testimony regarding compliance with those injunctions—especially from a high-ranking government official—has no bearing on resolving the claims of the parties actually before the court, and certainly is not "essential to the case," *In re U.S. Dep't of Educ.*, 25 F.4th at 703.

## CONCLUSION

The petition for a writ of mandamus should be granted.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

BRAD HINSHELWOOD
DANIEL WINIK
DOUGLAS C. DREIER

 */s/ Sophia Shams*
SOPHIA SHAMS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7213*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*
  *Sophia.Shams@usdoj.gov*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this petition complies with Federal Rules of Appellate Procedure 21(d) and 32(c) because it has been prepared in 14-point Book Antiqua, a proportionally spaced font, and that it complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because it contains 6,778 words, according to Microsoft Word.

/s/ Sophia Shams
Sophia Shams

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2026, I electronically filed the foregoing petition with the United States Court of Appeals for the Federal Circuit, along with the attached addendum, appearance form, and stay motion, by using the appellate CM/ECF system.  I served the petition and attachments by email on the following counsel for the *V.O.S. Selections* plaintiffs, who consented to that method of service under Federal Rule of Appellate Procedure 25(c)(2)(B):

> Jeffrey M. Schwab (jschwab@libertyjusticecenter.org)
> Bridget Conlan (bconlan@pacificlegal.org)
> Colleen Roh Sinzdak (crohsinzdak@milbank.com)
> Jessica Huang (jhuang@milbank.com)
> Neal Katyal (nkatyal@milbank.com)
> Reilly Stephens (rstephens@ljc.org)

I also provided a copy to the CIT by email (Geoffrey_Goell@cit.uscourts. gov).

<div align="right">

*/s/ Sophia Shams*
Sophia Shams

</div>

**ADDENDUM**

## TABLE OF CONTENTS

Order Denying Motion to Amend (*V.O.S. Selections*, Dkt. 89) ..................... A1

Motion to Amend with Thomas Declaration (*V.O.S. Selections*, Dkts. 88, 88-1) ................................................................................. A4

Order Compelling Commissioner to Testify (*V.O.S. Selections*, Dkt. 86) ............................................................................................ A16

Universal Injunction (*Atmus*, Dkt. 50)............................................................ A18

Universal Injunction (*Euro-Notions*, Dkt. 12).................................................. A20

Universal Injunction (*V.O.S. Selections*, Dkt. 82) .......................................... A23

Universal Injunction (*AGS*, Dkt. 43)............................................................... A26

Universal Injunction (*Grant*, Dkt. 14) ............................................................ A29

May 26, 2026 Declaration of Brandon Lord (*Euro-Notions*, Dkt. 30).......... A32

May 12, 2026 Order Requesting Progress Report (*Euro-Notions*, Dkt. 29) ....................................................................................... A36

May 12, 2026 Declaration of Brandon Lord (*Euro-Notions*, Dkt. 28).......... A38

April 28, 2026 Order Requesting Progress Report (*Euro-Notions*, Dkt. 27) ....................................................................................... A41

April 28, 2026 Declaration of Brandon Lord (*Euro-Notions*, Dkt. 26) ........ A43

Order Requesting Progress Report (*Euro-Notions*, Dkt. 19)........................ A46

April 14, 2026 Declaration of Brandon Lord (*Euro-Notions*, Dkt. 15) ........ A48

    Exhibit A: March 4, 2026 Response to Questions from the Court (*Atmus*, Dkt. 19)........................................................................ A53

    Exhibit B: March 6, 2026 Declaration of Brandon Lord (*Atmus*, Dkt. 33) ................................................................................. A57

Exhibit C: March 12, 2026 Declaration of Brandon Lord (*Atmus*, Dkt. 39) .......................................................................... A71

Exhibit D: March 19, 2026 Declaration of Brandon Lord (*Atmus*, Dkt. 47) .......................................................................... A78

Exhibit E: March 30, 2026 Declaration of Brandon Lord (*Atmus*, Dkt. 51) .......................................................................... A83

Order Requesting Progress Report (*Atmus*, Dkt. 52) .................................. A93

Order Requesting Progress Report (*Atmus*, Dkt. 49) .................................. A95

Order Requesting Progress Report (*Atmus*, Dkt. 41) .................................. A97

Order Requesting Progress Report (*Atmus*, Dkt. 40) .................................. A98

Order Partially Staying Matter (*Euro-Notions*, Dkt. 25) ............................ A102

Order Partially Staying Matter (*V.O.S Selections*, Dkt. 84) ........................ A103

Order Lifting Stay And Requiring Counsel to Confer for Closed Settlement Conferences (*V.O.S. Selections*, Dkt. 81) ........................ A105

Order Lifting Stay And Requiring Counsel to Confer for Closed Settlement Conferences (*AGS*, Dkt. 42) ........................................... A107

Order Lifting Stay And Requiring Counsel to Confer for Closed Settlement Conferences (*Grant*, Dkt. 15) .......................................... A108

Order Lifting Stay (*Euro-Notions*, Dkt. 9) ................................................ A109

Joint Stipulation (*Atmus*, Dkt. 16) ............................................................ A110

Order of Reassignment and Staying Cases (*V.O.S. Selections*, Dkt. 80) .............................................................................................. A114

Motion for Permanent Injunction (*V.O.S. Selections*, Dkt. 72) .................. A118

UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————— :
:
V.O.S. SELECTIONS, INC.; PLASTIC :
SERVICES AND PRODUCTS, LLC d/b/a :
GENOVA PIPE; MICROKITS, LLC; :
FISHUSA INC.; and TERRY PRECISION :
CYCLING LLC; :
:
    Plaintiffs, :
:   Before: Richard K. Eaton, Judge
:
  v. :
:   Court No. 25-00066
:
THE UNITED STATES OF AMERICA; :
UNITED STATES CUSTOMS AND :
BORDER PROTECTION; PETE R. :
FLORES, in his official capacity as :
Acting Commissioner for United States :
Customs and Border Protection; :
JAMIESON GREER, in his official :
capacity as United States Trade :
Representative; OFFICE OF THE UNITED :
STATES TRADE REPRESENTATIVE; :
and HOWARD LUTNICK, in his official :
capacity as Secretary of Commerce; :
:
    Defendants. :
———————————————————— :

**ORDER**

   This case involves $166 billion. On February 20, 2026, the Supreme Court held that U.S. Customs and Border Protection ("Customs") had unlawfully collected $166 billion in duties imposed pursuant to the International Emergency Economic Powers Act ("IEEPA"). *See Learning Res., Inc. v. Trump*, 146 S. Ct. 628 (2026). It is undisputed that the remedy for this unlawful collection is for the United States Government to refund the unlawfully collected duties. *See McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dep't of Bus. Regul. of Fla.*, 496 U.S. 18 (1990).

**A1**

The Honorable Rodney S. Scott is the Commissioner for U.S. Customs and Border Protection. In this role, Commissioner Scott "directs [Customs'] . . . trade enforcement, while facilitating $4 trillion in trade." *Commissioner's Office*, U.S. CUSTOMS AND BORDER PROTECTION, https://www.cbp.gov/about/leadership-organization/commissioners-office (last visited May 29, 2026). Thus, he is responsible for the assessment and collection of duties, and when required, for their refund. Importantly, Commissioner Scott is both a policy maker and an administrator.

On March 4, 2026, the court directed that all unlawfully collected IEEPA duties should be refunded to the importers that had made deposits. On March 6, Customs acknowledged that it had an obligation to refund the duties, and proposed that it develop a voluntary system for their return.

Under Commissioner Scott's direction, Customs expeditiously developed the Consolidated Administration and Processing of Entries ("CAPE") program, through which billions of dollars of unlawfully collected IEEPA duties have been returned to importers, and billions more are being processed. Nonetheless, there are billions of dollars of duties that currently cannot be processed by the CAPE program but still must be refunded. It is understood that most of the refunds that have been processed so far have gone to large importers, not small.

To date, Customs has not proposed a method for complying with the court's order to refund all of the unlawfully collected duties, including those owing to small importers.

Commissioner Scott's testimony is necessary to ascertain if it is the Government's policy to return all of the unlawfully collected duties either by complying with the court's order, or by some other means—that is, if it is the Government's policy to refund the duties to importers both large and small. There is $166 billion involved.

The court is fully aware of Customs' *Touhy* regulations and the separation of powers concerns that are potentially raised when an executive official is directed to appear in court. To the

**A2**

Court No. 25-00066                                                                          Page 3

extent such concerns exist here, the court has taken these matters into account in denying the

Government's motion.

     Accordingly, it is hereby

     **ORDERED** that Defendants' Motion to Amend Order, ECF No. 88, is denied.


                                                         /s/ Richard K. Eaton
                                                            Judge

Dated:  May 29, 2026
        New York, New York

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:     THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| V.O.S. SELECTIONS, INC., PLASTIC SERVICES AND PRODUCTS, LLC d/b/a GENOVA PIPE, MICROKITS, LLC, FISHUSA INC., TERRY PRECISION CYCLING LLC, <br><br>     Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP in his official capacity, EXECUTIVE OFFICE OF THE PRESIDENT, THE UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION, PETE R. FLORES in his official capacity, JAMIESON GREER in his official capacity, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, and HOWARD LUTNICK in his official capacity, <br><br>     Defendants. | Court No. 25-00066 |

### DEFENDANTS' MOTION TO AMEND ORDER

Pursuant to Rule 7(b), defendants respectfully request that the Court amend its May 27, 2026 order, which currently requires Customs and Border Protection Commissioner Rodney S. Scott to appear in court for live testimony on June 9, 2026. The Court has *sua sponte* directed Commissioner Scott—a Presidentially-nominated and Senate-confirmed Executive Branch official—"to appear to answer the court's questions as to the anticipated timing of Customs' compliance with the court's order," a subject that defendants have addressed through the submitted declarations in recent months. *Id.* Because Commissioner Scott is a high-ranking Government official, he cannot be ordered to testify except under extraordinary circumstances where he has first-hand knowledge of the issues and where there are no alternative witnesses.

**A4**

That is clearly and indisputably not the case: there are no such extraordinary circumstances here and there are two alternative witnesses who are more directly involved with the issues the Court wishes to discuss.

1.      On April 17, 2026, this Court entered an injunction that directed tariff refunds but suspended immediate compliance.  There are three general categories of IEEPA tariffs[1] subject to the Court's suspended injunction.  *First*, tariffs that were paid on entries that are unliquidated or nonfinal and therefore still in CBP's control.  Relying on its own authorities, CBP is already in the process of refunding approximately $85 billion of these tariffs—over half the total amount of IEEPA tariffs paid.  *Euro-Notions Florida, Inc. v. Customs and Border Protection*, 25-595, ECF 30.  And more claims are being filed, which means additional refunds will be processed in the coming weeks.[2]

*Second*, tariffs that were paid on entries that are finally liquidated and for which parties have filed cases in this Court.  Once an entry is finally liquidated, CBP has no authority to reliquidate or refund money without a court order.  *See Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1314 (Fed. Cir. 2004) (finding a limited exception to finality for Administrative Procedure Act claims and granting the relief of reliquidation).  Defendants have maintained that refunds for such imports must be handled through importer-specific orders requiring reliquidation once CBP has completed programmatic changes for other categories of refunds the Court has directed it to prioritize.  The Court has so far declined to issue importer-specific

---

[1]  We use the term IEEPA tariffs to mean those that assessed under the International Emergency Economic Powers Act.  As the Court has recognized, "nothing in" its injunction "addresses issues concerning duty free de minimis treatment under 19 U.S.C. § 1321 that are otherwise before this Court."  ECF 82 (citing *Axle of Dearborn, Inc. v. Department of Commerce et al.,* 25-00091).

[2]  CBP is now deploying programmatic enhancements that will allow the vast majority of entries flagged for reconciliation to be processed.

**A5**

relief.[3]  And as far as immediate compliance goes for the second category, CBP's biweekly declarations make clear that immediate compliance cannot be accomplished without additional system enhancements that will be rolled out in phases.[4]  *Atmus,* ECF 31.

*Third*, tariffs that were paid on entries that are finally liquidated and for which parties have not filed cases in this Court.  As noted above, CBP has no authority to reliquidate or refund money without a court order.  This Court has entered a universal injunction ordering CBP to reliquidate final entries including entries made by importers who have not sued in this Court.  But defendants have explained, and as they will explain in their forthcoming response to the Court's order to show cause, the universal injunction exceeds the Court's jurisdiction and equitable authority under *Trump v. CASA, Inc.*, 606 U.S. 831, 839 (2025).  For that reason, defendants intend to appeal the Court's universal injunction and to seek a stay of the injunction except as to the particular importer plaintiffs in each case in which the Court has entered the injunction.

2.    The Court has set the June 9 hearing to consider whether to lift the stay it has maintained on the universal injunction entered in this and other cases.  Defendants' brief will show that the stay should remain in place based on facts that CBP has already established

---

[3]  Since March 2026, the Court has held what it calls "settlement conferences" in a handful of test cases that it has chosen *sua sponte*.  See *Atmus Filtration, Inc. v. United States*, 26-1259, ECF 31, 36, 38, 39, 47; Euro-Notions, ECF 15, 26, 30.  Because these conferences are off-the-record, we are careful not to make statements for which we have no transcript citation.  Nevertheless, to explain the issues still left to be decided, it is necessary here to explain some limited history of these conferences.

[4] CBP has developed a new electronic module (the Consolidated Administration and Processing of Entries (CAPE)) within its Automated Commercial Environment (ACE).  Since CAPE's launch, CBP has devoted enormous resources to increase the CAPE functionality, at the specific direction of the Court.  At each phase, CBP has diligently apprised the Court of its progress without any indication from the Court that it was dissatisfied with the speed with which CBP has complied, or the prioritization that CBP has applied.

3

**A6**

through declarations, including that immediate compliance with the injunction is impossible for

CBP and that CBP is moving as quickly as it can to process refunds in a phased approach.  No

party has suggested a need for live testimony in next month's hearing; the Court instead *sua*

*sponte* directed the Commissioner of CBP—a Presidentially-nominated and Senate-confirmed

Executive Branch official, *see* 6 U.S.C. § 113(a)(1)(C)—to testify.  *See*

https://www.senate.gov/legislative/LIS/roll_call_votes/vote1191/vote_119_1_00321.htm;

https://www.congress.gov/nomination/119th-congress/12/40.  We respectfully request that the

Court amend the order to allow one of two officials to testify in the Commissioner's place: Susan

Thomas, CBP's Executive Assistant Commissioner for Trade, or Brandon Lord, the CBP official

who has already submitted multiple declarations to the Court.  Requiring the Commissioner's

testimony would clearly and indisputably contradict law, and if the Court denies this motion, the

government will promptly seek mandamus relief from the Federal Circuit.

"[A] district court should rarely, if ever, compel the attendance of a high-ranking official

in a judicial proceeding." *In re United States (Jackson)*, 624 F.3d 1368, 1376 (11th Cir. 2010).

In *United States v. Morgan*, the Supreme Court held that the Secretary of Agriculture should not

have been subjected to a deposition because it was improper "to probe [his] mental processes[.]"

313 U.S. 409, 421-22 (1941).  Since then, the Federal Circuit and other courts across the nation

have routinely held that high-ranking government officials should not—absent exceptional

circumstances—be deposed or called to testify regarding an agency's reasons for taking, or facts

regarding, official action.  Such testimony can be compelled only when the official has "first-

hand knowledge" of the information and "other persons cannot provide the necessary

information."  *In re United States* (*Bernanke*), 542 F. App'x 944, 948 (Fed. Cir. 2013) (setting

forth the "extraordinary circumstances" standard and explaining that testimony should be

**A7**

required); *see, e.g.*, *In re Musk*, 169 F.4th 445, 448-49 (4th Cir. 2026).  This is sometimes known as the "apex doctrine."

Heads of government offices, including those of sub-Cabinet rank, fall within the core protection of the doctrine restricting depositions of high-level officials.  *See, e.g.*, *In re Murthy*, No. 22-30697, 2022 U.S. App. LEXIS 38050, at *4 (5th Cir. Nov. 21, 2022) (Surgeon General and Director of the Cybersecurity and Infrastructure Security Agency (CISA), a component of the Department of Homeland Security (DHS)); *Musk*, 169 F.4th at 448 (officials of the Department of Government Efficiency (DOGE)); *In re Noem*, No. 25-2936 (7th Cir. Oct. 31, 2025) (CBP official);  *In re Commodity Futures Trading Comm'n*, 941 F.3d 869, 873 (7th Cir. 2019) (Commodity Futures Trading Commission Chairman, Commissioners, and staff); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (Directors of the Federal Deposit Insurance Corporation); *In re United States*, 985 F.2d 510, 512-513 (11th Cir. 1993) (per curiam) (FDA Commissioner); *In re Office of Inspector Gen., R.R. Ret. Bd.*, 933 F.2d 276, 277-78 (5th Cir. 1991) (Inspector General of Railroad Retirement Board).  Commissioner Scott plainly qualifies, as the head of an agency (like CISA, a component of DHS) that employs more than 60,000 people and carries out vital national functions.

Because Commissioner Scott plainly falls within the protections of the apex doctrine, he can properly be required to testify only under the exceptional circumstance of his having relevant first-hand knowledge that cannot be obtained from another source.  That is clearly and indisputably not the case here.  Indeed, Commissioner Scott is not even the official with the most direct first-hand knowledge of the answers to the Court's questions.  The people with the most direct knowledge are Susan Thomas and Brandon Lord.  Executive Assistant Commissioner Thomas reports to the Commissioner and is the senior-most official for trade matters.  Thomas

**A8**

Decl. ¶ 6. She is also the senior-most person with direct knowledge of the answers to the Court's question. *Id.* She has direct knowledge about the impractability of immediate compliance, as well as specific information about refunds plaintiffs either has or will soon receive. *Id.*

As the Court is aware, Mr. Lord is the Executive Director, Trade Programs Directorate, Office of Trade, at CBP. He has so far submitted eight refund-status declarations in *Atmus* and *Euro-Notions*, both of which were or are now subject to the Court's "settlement conferences" held over the last three months. *Atmus,* ECF 31, 36, 38, 39, 47; *Euro-Notions*, ECF 15, 26, 30. Executive Director Lord's declarations have covered the range of CBP's extraordinary efforts to refund IEEPA duties, addressing issues including CBP's programmatic capabilities and obstacles as well as the time required to implement various aspects of the Court's wishes. Both Executive Assistant Commissioner Thomas and Executive Director Lord are available to testify on June 9th.

In this scenario—when there are clearly alternative ways of obtaining the facts on which a high-level official has been called to testify—it is unlawful to compel the testimony of Commissioner Scott. Appellate courts routinely grant mandamus relief from such orders. *See, e.g.*, *In re Paxton*, 60 F.4th 252, 258 (5th Cir. 2023) (no extraordinary circumstances justified subpoena of Texas Attorney General where another official could provide the necessary information on the Attorney Generals behalf); *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (holding that the case did "not present extraordinary circumstances or a special need for the Commissioner's testimony" where the "record discloses that testimony was available from an alternate witness); *In re Commodity Future Trading Comm'n*, 941 F.3d 869, 874 (7th Cir. 2019). There is simply no reason to require Commissioner Scott's presence when the Court has appropriately relied on Executive Director Lord for three months to provide exactly the type of

**A9**

information it now seeks at a public hearing, and when both Executive Assistant Commissioner

Thomas and Executive Director Lord are available.

For these reasons, we respectfully request that the Court amend its order to substitute

Executive Assistant Commissioner Thomas or Executive Director Lord for Commissioner Scott.

We also respectfully request that the Court rule on this motion by Tuesday, June 2, 2026, at

12:00 p.m. eastern time, to allow defendants time to seek mandamus relief in the Federal Circuit

if the motion is denied.  If the Court denies this motion, we ask that it stay the June 9th hearing

to allow the Federal Circuit time to rule on the mandamus petition.

<div style="margin-left: 50%;">

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

<u>/s/ Claudia Burke</u>
CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
(202) 353-9063
claudia.burke@usdoj.gov

</div>

May 29, 2026                                     *Attorneys for Defendants*

7

**A10**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 29, 2025, I caused the foregoing "DEFENDANTS'

MOTION TO AMEND ORDER" to be filed and served electronically via the Court's CM/ECF

system.


<u>/s/Claudia Burke</u>

**A11**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

|  |  |
|---|---|
| V.O.S. SELECTIONS, INC.; PLASTIC SERVICES AND PRODUCTS, LLC d/b/a: GENOVA PIPE; MICROKITS, LLC; FISHUSA INC.; and TERRY PRECISION CYCLING LLC,<br><br>        Plaintiffs,<br><br>   v.<br><br>UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection, et al,<br><br>        Defendants. | Court No. 25-00066 |

**DECLARATION OF EXECUTIVE ASSISTANT COMMISSIONER SUSAN S. THOMAS**

I, Susan S. Thomas, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Assistant Commissioner (EAC), Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since March 2026. My work includes enforcing over 500 U.S. trade laws, including the implementation of tariff measures under the International Emergency Economic Powers Act (IEEPA), overseeing 14 trade agreements, directing CBP's seven Priority Trade Issues in collaboration with 49 partner

1

**A12**

government agencies, and overseeing the regulatory framework for more than $3 trillion in legitimate trade each year. Previously, I served as the Acting Executive Assistant Commissioner, Office of Trade, from March 2025 until March 2026. Prior to my tenure as the Acting Executive Assistant Commissioner of the Office of Trade, I held various leadership positions within CBP focused on cargo security, trade enforcement, and operation management. I have been employed by CBP or its predecessor agencies since 1995.

2. The Office of Trade (OT) consolidates the trade policy, program development, and compliance measurement functions of CBP, leads development of CBP's national strategy to enforce trade laws, and manages the design and implementation of strategic initiatives for trade compliance and enforcement. OT directs national enforcement responses through coordination with international partners and other U.S. government agencies, and it directs the enforcement of intellectual property rights (IPR), the identification of risks to detect and prevent the importation of contaminated agricultural or food products, the enforcement of free trade agreement eligibility, the administration of CBP's forced labor efforts, and the administration of the nation's antidumping and countervailing duty (AD/CVD) laws. Finally, OT oversees the issuance of all CBP regulations, legally binding rulings and decisions, informed compliance publications and structured programs for external CBP training and outreach on international trade laws and CBP regulations.

3. As the Executive Assistant Commissioner for the Office of Trade, I report directly to Commissioner Rodney S. Scott.

4. In my role, I oversee the development and implementation of the Consolidated Administration and Processing of Entries (CAPE) functionality. CAPE is a new

2

**A13**

capability within CBP's system of record for imported merchandise — the Automated Commercial Environment (ACE) — to calculate and provide valid refunds of additional *ad valorem* duties imposed under IEEPA. CBP is developing and deploying the CAPE functionality in phases. The first phase of the CAPE functionality became available for use by importers and their brokers in ACE at 7:11am eastern time on Monday, April 20, 2026. The Executive Director of the Trade Programs Directorate within the Office of Trade, Brandon Lord, has filed numerous declarations in *Euro-Notions Florida, Inc. v. United States et. al.*, CIT Court No. 25-00595, outlining CBP's progress in refunding IEEPA duties in CAPE. Executive Director Lord reports directly to me.

5. In the Court's Order of May 27, 2026, Commissioner Rodney Scott was "directed to appear to answer the court's questions as to the anticipated timing of Customs' compliance with the court's order" that CBP must "liquidate or reliquidate, without regard to IEEPA duties, all entries entered subject to IEEPA duties." As explained in this declaration, I am the most senior CBP official with direct knowledge to provide this testimony.

6. As the official directly overseeing the development and implementation of CAPE for the provision of IEEPA refunds, I can speak to CBP's current capabilities to liquidate or reliquidate "all entries entered subject to IEEPA duties" without the assessment of IEEPA duties, its plan to develop additional capabilities for refunds on different categories of imports, and the programmatic and resource constraints preventing the agency's immediate compliance. I can also speak to the harm to CBP that would result if the agency were required to comply with the order immediately, and the status of plaintiffs' refunds in this action. Accordingly, I am the senior-most knowledgeable person within CBP on the topics the Court wishes to discuss.

3

**A14**

7.  I am available to testify on June 9, 2026.

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 29th day of May, 2026.

Susan S. Thomas
Executive Assistant Commissioner
Office of Trade
U.S. Customs and Border Protection

4

**A15**

UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| ———————————————————— : | | |
| V.O.S. SELECTIONS, INC.; PLASTIC : | | |
| SERVICES AND PRODUCTS, LLC d/b/a : | | |
| GENOVA PIPE; MICROKITS, LLC; : | | |
| FISHUSA INC.; and TERRY PRECISION : | | |
| CYCLING LLC; : | | |
| : | | |
| : | | |
| Plaintiffs, : | | |
| : | Before: Richard K. Eaton, Judge | |
| v. : | | |
| : | Court No. 25-00066 | |
| THE UNITED STATES OF AMERICA; : | | |
| UNITED STATES CUSTOMS AND : | | |
| BORDER PROTECTION; PETE R. : | | |
| FLORES, in his official capacity as : | | |
| Acting Commissioner for United States : | | |
| Customs and Border Protection; : | | |
| JAMIESON GREER, in his official : | | |
| capacity as United States Trade : | | |
| Representative; OFFICE OF THE UNITED : | | |
| STATES TRADE REPRESENTATIVE; : | | |
| and HOWARD LUTNICK, in his official : | | |
| capacity as Secretary of Commerce; : | | |
| : | | |
| Defendants. : | | |
| ————————————————————: | | |

**ORDER**

Upon review of the papers and proceedings had herein, it is hereby

**ORDERED** that the stay in this case is lifted sua sponte; it is further

**ORDERED** that the parties are directed to show cause as to why the court should not

remove the suspension of immediate compliance with its order that U.S. Customs and Border

Protection ("Customs") liquidate or reliquidate, without regard to IEEPA duties, all entries entered

subject to IEEPA duties; it is further

**ORDERED** that by 4:00 p.m. EDT on June 4, 2026, each of the parties shall submit a brief,

not longer than 10 pages, in response to this Order to Show Cause; and it is further

**A16**

**ORDERED** that a hearing on this Order to Show Cause is scheduled for June 9, 2026, at 1:30 p.m. EDT in Courtroom 1, located at One Federal Plaza, New York, New York 10278. The Honorable Commissioner Rodney S. Scott, U.S. Customs and Border Protection, is directed to appear to answer the court's questions as to the anticipated timing of Customs' compliance with the court's order. All Counsel and the Commissioner are directed to appear at the hearing in person.

<div align="right">

_____/s/ Richard K. Eaton_____
Judge

</div>

Dated:  May 27, 2026
           New York, New York

**A17**

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| ATMUS FILTRATION, INC.,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>　　　　　Defendant. | :<br>:<br>:<br>:<br>:　Before: Richard K. Eaton, Judge<br>:<br>:　Court No. 26-01259<br>:<br>:<br>:<br>: |

**ORDER**

Upon consideration of the papers and proceedings had herein, it is hereby

**ORDERED** that the court's Amended Order dated March 20, 2026, ECF No. 49, is further amended to add a sentence so that the ordered paragraph reads: "**ORDERED** that, with respect to any and all unliquidated entries that were entered subject to IEEPA duties, U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties. Any liquidated entries for which liquidation is final shall be reliquidated without regard to the IEEPA duties. For the avoidance of doubt, nothing in this order addresses issues concerning duty free de minimis treatment under 19 U.S.C. § 1321 that are otherwise before this Court. *See Axle of Dearborn, Inc. v. Department of Commerce et al.* (1:25-cv-00091-3JP)."; and it is further

A18

Court No. 26-01259                                                                 Page 2

       **ORDERED** that the court continues to suspend the Amended Order dated March 20, 2026,

ECF No. 49, as amended above, to the extent that it requires immediate compliance.


                                                            /s/ Richard K. Eaton
                                                                    Judge

Dated: March 27, 2026
       New York, New York


**A19**

UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————————
                                                    :
EURO-NOTIONS FLORIDA, INC.,                          :
                                                    :
                    Plaintiff,                      :
                                                    :          Before: Richard K. Eaton, Judge
        v.                                          :
                                                    :          Court No. 25-00595
U.S. CUSTOMS AND BORDER                              :
PROTECTION; RODNEY S. SCOTT, in                      :
his official capacity as Commissioner of            :
U.S. Customs and Border Protection;                  :
and the UNITED STATES,                               :
                                                    :
                    Defendants.                     :
                                                    :
———————————————————————

**ORDER**

Plaintiff Euro-Notions Florida, Inc. ("Plaintiff") is the importer of record of entries that

entered the United States subject to duties imposed by various Executive Orders pursuant to the

International Emergency Economic Powers Act ("IEEPA"). Plaintiff commenced this lawsuit

seeking, inter alia, injunctive and monetary relief, including a "refund [of] all challenged IEEPA

tariffs Plaintiff has deposited to date and at any future point with interest as provided by law."

Compl. at 11, ECF No. 2.

Plaintiff's entries are among the millions of entries that were entered subject to IEEPA

duties, which the Supreme Court ruled unlawful in *Learning Resources, Inc. v. Trump*, 2026 WL

477534 (U.S. Feb. 20, 2026). All importers of record whose entries were subject to IEEPA duties

are entitled to the benefit of the *Learning Resources* decision.

In *Trump v. CASA, Inc.*, the Supreme Court held "that universal injunctions are

impermissible." 606 U.S. 831, 865 (2025). That holding, however, does not apply to the orders

that will be issued in this case. The Court's discussion of "whether, under the Judiciary Act of

**A20**

1789, federal courts have equitable authority to issue universal injunctions" does not constitute a legal direction to this Court. *Id.* at 839. Nearly 200 years after the Judiciary Act of 1789, the United States Court of International Trade was established pursuant to the Customs Courts Act of 1980, Pub. L. No. 96-417, 94 Stat. 1727 (codified as amended in scattered sections of 28 U.S.C.). To that end the Court was provided with national geographic jurisdiction. *See* 28 U.S.C. § 1581.

The Court was also given exclusive subject matter jurisdiction to hear claims like those presented in this case. This exclusive jurisdiction was recently acknowledged by the Supreme Court. *See Learning Res., Inc.*, 2026 WL 477534, at *6 n.1 ("We agree with the Federal Circuit that the *V.O.S. Selections* case falls within the exclusive jurisdiction of the [United States Court of International Trade]."). That is, the parties to a case in no other court will be bound by this order. Moreover, when establishing this Court, Congress cited "[c]onsiderations of judicial economy, and the need to increase the availability of judicial review in the field of international trade in a manner which results in uniformity without sacrificing the expeditious resolution of import-related disputes." 126 CONG. REC. S13344 (daily ed. Sept. 24, 1980) (statement of Sen. Dennis DeConcini). The Constitution requires this uniformity. U.S. CONST. art. I § 8, cl. 1 (providing that "all Duties, Imposts and Excises shall be uniform throughout the United States").

Finally, the Chief Judge has indicated that I am the only judge who will hear cases pertaining to the refund of IEEPA duties. So there is no danger that another Judge, even one in this Court, will reach any contrary conclusions. To find otherwise would be to thwart the efficient administration of justice and to deny those importers who have filed suit the efficient resolution of their claims, and to deny entirely importers who have not filed suit the benefit of the *Learning Resources* decision.

Accordingly, it is hereby

**A21**

ORDERED that, with respect to any and all unliquidated entries that were entered subject to IEEPA duties, U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties. Any liquidated entries for which liquidation is final shall be reliquidated without regard to the IEEPA duties. For the avoidance of doubt, nothing in this order addresses issues concerning duty free de minimis treatment under 19 U.S.C. § 1321 that are otherwise before this Court. *See Axle of Dearborn, Inc. v. Department of Commerce et al.* (1:25-cv-00091-3JP).

ORDERED that this order is suspended to the extent that it requires immediate compliance.

<div align="right">

/s/ Richard K. Eaton
Judge

</div>

Dated: April 7, 2026
       New York, New York

**A22**

UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————————

V.O.S. SELECTIONS, INC.; PLASTIC  :
SERVICES AND PRODUCTS, LLC d/b/a  :
GENOVA PIPE; MICROKITS, LLC;  :
FISHUSA INC.; and TERRY PRECISION  :
CYCLING LLC;  :
 :
        Plaintiffs,  :
 :
           v.  :
 :
THE UNITED STATES OF AMERICA;  :
UNITED STATES CUSTOMS AND  :
BORDER PROTECTION; PETE R.  :
FLORES, in his official capacity as  :
Acting Commissioner for United States  :
Customs and Border Protection;  :
JAMIESON GREER, in his official  :
capacity as United States Trade  :
Representative; OFFICE OF THE UNITED  :
STATES TRADE REPRESENTATIVE;  :
and HOWARD LUTNICK, in his official  :
capacity as Secretary of Commerce;  :
 :
        Defendants.  :
 :

———————————————————————

Before: Richard K. Eaton, Judge

Court No. 25-00066

**ORDER**

Plaintiffs V.O.S. Selections, Inc.; Plastic Services and Products, LLC d/b/a Genova Pope; Microkits, LLC; FishUSA Inc.; and Terry Precision Cycling LLC ("Plaintiffs") are the importers of record of entries that entered the United States subject to duties imposed by various Executive Orders pursuant to the International Emergency Economic Powers Act ("IEEPA"). Plaintiffs commenced this lawsuit seeking, inter alia, injunctive and monetary relief, including "damages in the amount of any tariffs collected by Defendants pursuant to the challenged orders." Compl. at 24, ECF No. 2.

**A23**

Plaintiffs' entries are among the millions of entries that were entered subject to IEEPA duties, which the Supreme Court ruled unlawful in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026). All importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision.

In *Trump v. CASA, Inc.*, the Supreme Court held "that universal injunctions are impermissible." 606 U.S. 831, 865 (2025). That holding, however, does not apply to the orders that will be issued in this case. The Court's discussion of "whether, under the Judiciary Act of 1789, federal courts have equitable authority to issue universal injunctions" does not constitute a legal direction to this Court. *Id.* at 839. Nearly 200 years after the Judiciary Act of 1789, the United States Court of International Trade was established pursuant to the Customs Courts Act of 1980, Pub. L. No. 96-417, 94 Stat. 1727 (codified as amended in scattered sections of 28 U.S.C.). To that end the Court was provided with national geographic jurisdiction. *See* 28 U.S.C. § 1581.

The Court was also given exclusive subject matter jurisdiction to hear claims like those presented in this case. This exclusive jurisdiction was recently acknowledged by the Supreme Court. *See Learning Res., Inc.*, 2026 WL 477534, at *6 n.1 ("We agree with the Federal Circuit that the *V.O.S. Selections* case falls within the exclusive jurisdiction of the [United States Court of International Trade]."). That is, the parties to a case in no other court will be bound by this order. Moreover, when establishing this Court, Congress cited "[c]onsiderations of judicial economy, and the need to increase the availability of judicial review in the field of international trade in a manner which results in uniformity without sacrificing the expeditious resolution of import-related disputes." 126 CONG. REC. S13344 (daily ed. Sept. 24, 1980) (statement of Sen. Dennis DeConcini). The Constitution requires this uniformity. U.S. CONST. art. I § 8, cl. 1 (providing that "all Duties, Imposts and Excises shall be uniform throughout the United States").

**A24**

Finally, the Chief Judge has indicated that I am the only judge who will hear cases pertaining to the refund of IEEPA duties. So there is no danger that another Judge, even one in this Court, will reach any contrary conclusions. To find otherwise would be to thwart the efficient administration of justice and to deny those importers who have filed suit the efficient resolution of their claims, and to deny entirely importers who have not filed suit the benefit of the *Learning Resources* decision.

Accordingly, it is hereby

**ORDERED** that, with respect to any and all unliquidated entries that were entered subject to IEEPA duties, U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties. Any liquidated entries for which liquidation is final shall be reliquidated without regard to the IEEPA duties. For the avoidance of doubt, nothing in this order addresses issues concerning duty free de minimis treatment under 19 U.S.C. § 1321 that are otherwise before this Court. *See Axle of Dearborn, Inc. v. Department of Commerce et al.* (1:25-cv-00091-3JP); and it is further

**ORDERED** that this order is suspended to the extent that it requires immediate compliance.

<div align="right">

/s/ Richard K. Eaton
Judge

</div>

Dated: April 17, 2026
New York, New York

**A25**

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| AGS COMPANY AUTOMOTIVE SOLUTIONS, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | Before: Richard K. Eaton, Judge |
| Turn5, Inc., et. al., | : | |
| | : | Consol. Court No. 25-00255 |
| Consolidated Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER**

In this consolidated action, the lead Plaintiff, AGS Company Automotive Solutions ("Plaintiff"), is an importer of record of entries that entered the United States subject to duties imposed by various Executive Orders pursuant to the International Emergency Economic Powers Act ("IEEPA"). Plaintiff commenced this lawsuit seeking, inter alia, injunctive and monetary relief, including a "refund to Plaintiff [of] the IEEPA duties collected on those entries, with interest as provided by law." Compl. at 16, ECF No. 3.

Plaintiff's entries are among the millions of entries that were entered subject to IEEPA duties, which the Supreme Court ruled unlawful in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026). All importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision.

**A26**

In *Trump v. CASA, Inc.*, the Supreme Court held "that universal injunctions are impermissible." 606 U.S. 831, 865 (2025). That holding, however, does not apply to the orders that will be issued in this case. The Court's discussion of "whether, under the Judiciary Act of 1789, federal courts have equitable authority to issue universal injunctions" does not constitute a legal direction to this Court. *Id.* at 839. Nearly 200 years after the Judiciary Act of 1789, the United States Court of International Trade was established pursuant to the Customs Courts Act of 1980, Pub. L. No. 96-417, 94 Stat. 1727 (codified as amended in scattered sections of 28 U.S.C.). To that end the Court was provided with national geographic jurisdiction. *See* 28 U.S.C. § 1581.

The Court was also given exclusive subject matter jurisdiction to hear claims like those presented in this case. This exclusive jurisdiction was recently acknowledged by the Supreme Court. *See Learning Res., Inc.*, 2026 WL 477534, at *6 n.1 ("We agree with the Federal Circuit that the *V.O.S. Selections* case falls within the exclusive jurisdiction of the [United States Court of International Trade]."). That is, the parties to a case in no other court will be bound by this order. Moreover, when establishing this Court, Congress cited "[c]onsiderations of judicial economy, and the need to increase the availability of judicial review in the field of international trade in a manner which results in uniformity without sacrificing the expeditious resolution of import-related disputes." 126 CONG. REC. S13344 (daily ed. Sept. 24, 1980) (statement of Sen. Dennis DeConcini). The Constitution requires this uniformity. U.S. CONST. art. I § 8, cl. 1 (providing that "all Duties, Imposts and Excises shall be uniform throughout the United States").

Finally, the Chief Judge has indicated that I am the only judge who will hear cases pertaining to the refund of IEEPA duties. So there is no danger that another Judge, even one in this Court, will reach any contrary conclusions. To find otherwise would be to thwart the efficient administration of justice and to deny those importers who have filed suit the efficient resolution of

Consol. Court No. 25-00255                                                      Page 3

their claims, and to deny entirely importers who have not filed suit the benefit of the *Learning*

*Resources* decision.

Accordingly, it is hereby

**ORDERED** that, with respect to any and all unliquidated entries that were entered subject

to IEEPA duties, U.S. Customs and Border Protection is hereby directed to liquidate those entries

without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall

be reliquidated without regard to those duties. Any liquidated entries for which liquidation is final

shall be reliquidated without regard to the IEEPA duties. For the avoidance of doubt, nothing in

this order addresses issues concerning duty free de minimis treatment under 19 U.S.C. § 1321 that

are otherwise before this Court. *See Axle of Dearborn, Inc. v. Department of Commerce et al.*

(1:25-cv-00091-3JP); and it is further

**ORDERED** that this order is suspended to the extent that it requires immediate

compliance.

<div style="text-align:right">

/s/ Richard K. Eaton
Judge

</div>

Dated: April 17, 2026
New York, New York

**A28**

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

GRANT & BOWMAN, INC.,

        Plaintiff,

    v.

U.S. CUSTOMS AND BORDER
PROTECTION; RODNEY S. SCOTT, in
his official capacity as Commissioner of
U.S. Customs and Border Protection;
and the UNITED STATES,

        Defendants.

_____

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Before: Richard K. Eaton, Judge

Court No. 25-00689

**ORDER**

Plaintiff Grant & Bowman, Inc. ("Plaintiff") is the importer of record of entries that entered the United States subject to duties imposed by various Executive Orders pursuant to the International Emergency Economic Powers Act ("IEEPA"). Plaintiff commenced this lawsuit seeking, inter alia, injunctive and monetary relief, including a "refund to Plaintiff [of] all IEEPA Duties collected on merchandise imported by Plaintiff, with interest as provided by law." Compl. at 10, ECF No. 2.

Plaintiff's entries are among the millions of entries that were entered subject to IEEPA duties, which the Supreme Court ruled unlawful in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026). All importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision.

In *Trump v. CASA, Inc.*, the Supreme Court held "that universal injunctions are impermissible." 606 U.S. 831, 865 (2025). That holding, however, does not apply to the orders that will be issued in this case. The Court's discussion of "whether, under the Judiciary Act of

**A29**

1789, federal courts have equitable authority to issue universal injunctions" does not constitute a legal direction to this Court. *Id.* at 839. Nearly 200 years after the Judiciary Act of 1789, the United States Court of International Trade was established pursuant to the Customs Courts Act of 1980, Pub. L. No. 96-417, 94 Stat. 1727 (codified as amended in scattered sections of 28 U.S.C.). To that end the Court was provided with national geographic jurisdiction. *See* 28 U.S.C. § 1581.

The Court was also given exclusive subject matter jurisdiction to hear claims like those presented in this case. This exclusive jurisdiction was recently acknowledged by the Supreme Court. *See Learning Res., Inc.*, 2026 WL 477534, at *6 n.1 ("We agree with the Federal Circuit that the *V.O.S. Selections* case falls within the exclusive jurisdiction of the [United States Court of International Trade]."). That is, the parties to a case in no other court will be bound by this order. Moreover, when establishing this Court, Congress cited "[c]onsiderations of judicial economy, and the need to increase the availability of judicial review in the field of international trade in a manner which results in uniformity without sacrificing the expeditious resolution of import-related disputes." 126 CONG. REC. S13344 (daily ed. Sept. 24, 1980) (statement of Sen. Dennis DeConcini). The Constitution requires this uniformity. U.S. CONST. art. I § 8, cl. 1 (providing that "all Duties, Imposts and Excises shall be uniform throughout the United States").

Finally, the Chief Judge has indicated that I am the only judge who will hear cases pertaining to the refund of IEEPA duties. So there is no danger that another Judge, even one in this Court, will reach any contrary conclusions. To find otherwise would be to thwart the efficient administration of justice and to deny those importers who have filed suit the efficient resolution of their claims, and to deny entirely importers who have not filed suit the benefit of the *Learning Resources* decision.

Accordingly, it is hereby

**A30**

Court No. 25-00689                                                      Page 3

**ORDERED** that, with respect to any and all unliquidated entries that were entered subject to IEEPA duties, U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties. Any liquidated entries for which liquidation is final shall be reliquidated without regard to the IEEPA duties. For the avoidance of doubt, nothing in this order addresses issues concerning duty free de minimis treatment under 19 U.S.C. § 1321 that are otherwise before this Court. *See Axle of Dearborn, Inc. v. Department of Commerce et al.* (1:25-cv-00091-3JP); and it is further

**ORDERED** that this order is suspended to the extent that it requires immediate compliance.

<div align="right">

/s/ Richard K. Eaton
Judge
</div>

Dated: April 17, 2026
New York, New York

**A31**

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| EURO-NOTIONS FLORIDA, INC.,<br><br>         Plaintiff,<br><br>   v.<br><br>UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection,<br><br>         Defendants. | Court No. 25-00595 |

## DECLARATION OF BRANDON LORD
### RESPONDING TO MAY 12, 2026 COURT ORDER

I, Brandon Lord, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since July 2022.   In my role, I lead CBP's strategic efforts to enforce and protect the revenue, including the implementation of tariff measures under Section 232 of the Trade Expansion Act of 1962 and the International Emergency Economic Powers Act (IEEPA).   I lead the administration of priority international trade issues, including Tariffs and Trade Remedies, Intellectual

1

**A32**

Property Rights, Free Trade Agreements, Import Safety, Textiles and Antidumping and Countervailing Duties. Previously, I served as the Acting Executive Director for Trade Policy and Programs, Office of Trade, from March 2021 until November 2021, and as the Deputy Executive Director for Trade Policy and Programs, Office of Trade, from November 2017 until July 2022.

2.  CBP has developed a new capability within its system of record for imported merchandise — the Automated Commercial Environment (ACE) — to calculate and provide valid refunds of additional *ad valorem* duties imposed under IEEPA. This new ACE functionality is called the Consolidated Administration and Processing of Entries (CAPE).

3.  The first phase of the CAPE functionality became available for use by importers and their brokers in ACE at 7:11am eastern time on Monday, April 20, 2026. As of 3pm eastern time on Friday, May 22, 2026, 157,402 CAPE declarations have been submitted, of which 108,760 CAPE declarations passed the file validations.[1] The primary reasons that CAPE declarations fail the file validations are: (1) Importer of record or filer mismatches on CAPE declarations, (2) Entry Number validations (e.g., entry number is incorrect length; entry number does not exist), (3) .CSV file not in alignment with the template published in the ACE portal.

4.  As of 3pm eastern time on Friday, May 22, 2026, (a) the CAPE declarations that passed the file validations cover 15,852,806 entries with IEEPA duties that passed the entry-specific validations and were accepted for the removal of IEEPA duties through CAPE;[2]

---

[1] Please refer to ¶3.a of my declaration filed March 12, 2026, also included as Exhibit C to my declaration filed April 14, 2026, ECF 15, for a description of the file validations performed by the CAPE functionality after a CAPE Declaration is submitted.

[2] Please refer to ¶3.b of my declaration filed March 12, 2026, also included as Exhibit C to my declaration filed

2

A33

(b) 8,515,477 of the accepted entries have subsequently been liquidated and/or reliquidated without IEEPA duties; and (c) 3,481,844 entries included on CAPE declarations failed the entry level validations for the following primary reasons: the entry date is past CBP's 90 day re-liquidation authority, the entry does not contain a Chapter 99 Harmonized Tariff Schedule number used to assess IEEPA duties, or the entry was already filed on a prior CAPE declaration.

5. As of 3pm eastern time on Friday, May 22, 2026, approximately $85 billion in both potential and certified refunds have been accepted for processing in CAPE.[3] Of this total amount, refunds (duties plus interest) of approximately $20.6 billion have been completed using the CAPE Refund component,[4] certified by the agency, and sent to the U.S. Department of Treasury ("Treasury") for disbursement. CBP continues to review and finalize the outstanding potential refunds via CAPE's Review and Liquidation/Reliquidation component.[5]

6. As of 3pm eastern time on Friday, May 22, 2026, 4,185 consolidated refunds have not been transmitted to Treasury because Automated Clearing House account information has not been provided by the importer of record or its authorized CBP Form 4811 designee.

---

April 14, 2026, ECF 15, for a description of the entry-specific validations performed by the CAPE functionality after a CAPE Declaration successfully passes the file validations.

[3] In my declaration of May 12, 2026, paragraph 5 stated that "[a]s of 7am eastern time on Monday, May 11, 2026, the anticipated duty refund and interest amount for the 8,338,081 liquidated and/or reliquidated entries is approximately $35.46 billion." Upon further review, CBP has determined that the $35.46 billion figure referred to in paragraph 5 of my May 12, 2026 declaration was overstated by approximately $10 billion. This was not a reflection of any error in CAPE processing or refunds, but rather was the result of an inadvertent error in the data query used to calculate the figure. The correct figure for anticipated duty refunds with interest for liquidated and reliquidated entries at that time should have been approximately $25.46 billion.

[4] Please refer to ¶9 of my declaration filed March 12, 2026, also included as Exhibit C to my declaration filed April 14, 2026, ECF 15, for a description of the CAPE Refund component.

[5] Please refer to ¶7 of my declaration filed March 12, 2026, also included as Exhibit C to my declaration filed April 14, 2026, ECF 15, for a description of the CAPE Review and Liquidation/Reliquication component.

3

**A34**

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 26th day of May, 2026.

Brandon Lord
Executive Director
Trade Programs
Office of Trade
U.S. Customs and Border Protection

4

**A35**

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| ———————————————— | : | |
| EURO-NOTIONS FLORIDA, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Before: Richard K. Eaton, Judge |
| v. | : | |
| | : | Court No. 25-00595 |
| U.S. CUSTOMS AND BORDER | : | |
| PROTECTION; RODNEY S. SCOTT, in | : | |
| his official capacity as Commissioner of | : | |
| U.S. Customs and Border Protection; | : | |
| and the UNITED STATES, | : | |
| | : | |
| Defendants. | : | |
| ———————————————— | : | |

**ORDER**

At a closed conference held on May 12, 2026, the court and participants discussed the Declaration of Brandon Lord, Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection, dated May 12, 2026, 2026 (ECF No. 28) ("Lord Decl."), which provided updated information on the progress of Phase 1 of U.S. Customs and Border Protection's ("Customs") Consolidated Administration and Processing of Entries ("CAPE") program. Customs has liquidated or reliquidated approximately 8.3 million entries, for which it expects to refund $35.46 billion in International Emergency Economic Powers Act ("IEEPA") duties. It is worth repeating that those who wish to take advantage of CAPE must have ACH accounts. As of May 11, 2026, "1,880 consolidated refunds have not been transmitted to the Treasury because ACH account information has not been provided by the [importer of record] or its authorized . . . designee." Lord Decl. ¶ 6. It is apparent that importers of record should confirm that they have provided the required ACH account information to Customs.

**A36**

Court No. 25-00595                                                                   Page 2

Also discussed at the conference was CAPE's subsequent functionality, including with respect to processing refunds for entries flagged for reconciliation.

Additionally, the court was made aware that Customs is in contact with representatives of sureties regarding their refund claims.

Upon consideration of Mr. Lord's Declaration, and the papers and proceedings had herein, it is hereby

**ORDERED** that Defendant shall file, by 12:00 p.m. EDT on Tuesday, May 26, 2026, a short report on the progress of CAPE Phase 1. A closed settlement conference will be held in person and via Webex at 10:00 a.m. on Wednesday, May 27, 2026.

<div style="text-align:right">

/s/ Richard K. Eaton
Judge

</div>

Dated: May 12, 2026
     New York, New York

**A37**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

| | |
|---|---|
| EURO-NOTIONS FLORIDA, INC., | |
| Plaintiff, | |
| v. | Court No. 25-00595 |
| UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection, | |
| Defendants. | |

**DECLARATION OF BRANDON LORD**
**RESPONDING TO APRIL 28, 2026 COURT ORDER**

I, Brandon Lord, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since July 2022.   In my role, I lead CBP's strategic efforts to enforce and protect the revenue, including the implementation of tariff measures under Section 232 of the Trade Expansion Act of 1962 and the International Emergency Economic Powers Act (IEEPA).   I lead the administration of priority international trade issues, including Tariffs and Trade Remedies, Intellectual

1

**A38**

Property Rights, Free Trade Agreements, Import Safety, Textiles and Antidumping and Countervailing Duties. Previously, I served as the Acting Executive Director for Trade Policy and Programs, Office of Trade, from March 2021 until November 2021, and as the Deputy Executive Director for Trade Policy and Programs, Office of Trade, from November 2017 until July 2022.

2. CBP has developed a new capability within its system of record for imported merchandise — the Automated Commercial Environment (ACE) — to calculate and provide valid refunds of additional *ad valorem* duties imposed under IEEPA. This new ACE functionality is called the Consolidated Administration and Processing of Entries (CAPE).

3. The first phase of the CAPE functionality became available for use by importers and their brokers in ACE at 7:11am eastern time on Monday, April 20, 2026. As of 7am eastern time on Monday, May 11, 2026, 126,237 CAPE declarations have been submitted, of which 86,874 CAPE declarations passed the file validations.[1]

4. As of 7am eastern time on Monday, May 11, 2026, the CAPE declarations that passed the file validations cover 15,123,221 entries with IEEPA duties that passed the entry-specific validations and were accepted for the removal of IEEPA duties through CAPE.[2] As of the same time, 8,338,081 of the accepted entries have subsequently been liquidated and/or reliquidated without IEEPA duties.

5. As of 7am eastern time on Monday, May 11, 2026, the anticipated duty refund and

---

[1] Please refer to ¶3.a of my declaration filed March 12, 2026, also included as Exhibit C to my declaration filed April 14, 2026, ECF 15, for a description of the file validations performed by the CAPE functionality after a CAPE Declaration is submitted.

[2] Please refer to ¶3.b of my declaration filed March 12, 2026, also included as Exhibit C to my declaration filed April 14, 2026, ECF 15, for a description of the entry-specific validations performed by the CAPE functionality after a CAPE Declaration successfully passes the file validations.

2

**A39**

interest amount for the 8,338,081 liquidated and/or reliquidated entries is approximately

$35.46 billion. This amount reflects the sum of the anticipated principal to be refunded

and the associated interest due, after removal of the IEEPA duties and the liquidation

and/or reliquidation of the entries in accordance with all applicable laws and regulations.

Only a portion of these entries and their associated refunds and interest payments have

been consolidated by the CAPE Refund component[3] and sent to the U.S. Department of

Treasury ("Treasury"). Anticipated refunds and interest payments for the remaining

entries continue to be consolidated by the CAPE Refund component, based on the

entries' importer of record (IOR) or authorized CBP Form 4811 designee and date of

liquidation and/or reliquidation. CBP's transmission of these consolidated refunds to the

Treasury is subject to confirmation of Automated Clearing House (ACH) account

information by CBP prior to transmission.

6.  As of 7am eastern time on Monday, May 11, 2026, 1,880 consolidated refunds have not

    been transmitted to the Treasury because ACH account information has not been

    provided by the IOR or its authorized CBP Form 4811 designee.


I declare that the foregoing is true and correct to the best of my knowledge, information, and

belief.


Executed this 12th day of May, 2026.

Brandon Lord
Executive Director
Trade Programs
Office of Trade
U.S. Customs and Border Protection

---

[3] Please refer to ¶9 of my declaration filed March 12, 2026, also included as Exhibit C to my declaration filed April 14, 2026, ECF 15, for a description of the CAPE Refund component.

3

**A40**

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

EURO-NOTIONS FLORIDA, INC.,      :

                 :

         Plaintiff,      :

                 :       Before: Richard K. Eaton, Judge

     v.           :

                 :       Court No. 25-00595

U.S. CUSTOMS AND BORDER     :

PROTECTION; RODNEY S. SCOTT, in  :

his official capacity as Commissioner of

U.S. Customs and Border Protection;  :

and the UNITED STATES,      :

                 :

       Defendants.    :

_____:

**ORDER**

On April 20, 2026, U.S. Customs and Border Protection ("Customs") launched Phase 1 of its Consolidated Administration and Processing of Entries ("CAPE") capability within its ACE system to refund International Emergency Economic Powers Act ("IEEPA") duties with interest. Based on the Declaration of Brandon Lord, Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection, dated April 28, 2026 (ECF No. 26), approximately 21% of the total entries that were entered subject to IEEPA duties have been accepted for the removal of IEEPA duties through CAPE, and roughly 3% have been liquidated through CAPE and are in the refund stage of the process, which includes an issuance of the refund from the U.S. Department of the Treasury. Customs anticipates issuing the first refund on or about May 11, 2026.

At a closed conference held on April 28, 2026, the court and participants discussed users' experiences with CAPE Phase 1. The concerns include problems accessing ACE, due to, for example, long wait-times to reset usernames and passwords, over-registration of training events, and confusion with respect to identifying the correct importer to make a CAPE declaration. The

**A41**

discussion also involved questions regarding the interest rate that applies to refund amounts and the method Customs uses to calculate interest. In response to the concerns expressed during the conference, Customs will issue guidance, including by updating the Frequently Asked Questions section of its website.

The court and participants also discussed some importers' reports that IEEPA duties are still being collected on reconciliation entries, when, for example, the value of an entry is increased which results in an adjustment to the duties. Other topics addressed included issues surrounding treatment of categories of entries that are not eligible for CAPE Phase 1, such as reconciliation entries, certain suspended entries, and finally liquidated entries.

Upon consideration of Mr. Lord's Declaration, and the papers and proceedings had herein, it is hereby

**ORDERED** that Defendant shall file, by 12:00 p.m. EDT on Tuesday, May 12, 2026, a short report on the progress of CAPE Phase 1. A closed settlement conference will be held in person and via Webex at 2:00 p.m. the same day.

<div style="text-align: right">
/s/ Richard K. Eaton<br>
Judge
</div>

Dated: April 28, 2026
New York, New York

<div style="text-align: center">**A42**</div>

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| EURO-NOTIONS FLORIDA, INC., | |
| Plaintiff, | |
| v. | Court No. 25-00595 |
| UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection, | |
| Defendants. | |

## DECLARATION OF BRANDON LORD
## RESPONDING TO APRIL 14, 2026 COURT ORDER

I, Brandon Lord, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since July 2022. In my role, I lead CBP's strategic efforts to enforce and protect the revenue, including the implementation of tariff measures under Section 232 of the Trade Expansion Act of 1962 and the International Emergency Economic Powers Act (IEEPA). I lead the administration of priority international trade issues, including Tariffs and Trade Remedies, Intellectual

1

**A43**

Property Rights, Free Trade Agreements, Import Safety, Textiles and Antidumping and Countervailing Duties.  Previously, I served as the Acting Executive Director for Trade Policy and Programs, Office of Trade, from March 2021 until November 2021, and as the Deputy Executive Director for Trade Policy and Programs, Office of Trade, from November 2017 until July 2022.

2.  CBP has developed a new capability within its system of record for imported merchandise — the Automated Commercial Environment (ACE) — to calculate and provide valid refunds of additional *ad valorem* duties imposed under IEEPA.  This new ACE functionality is called the Consolidated Administration and Processing of Entries (CAPE).

3.  The first phase of the CAPE functionality became available for use by importers and their brokers in ACE at 7:11am eastern time on Monday, April 20, 2026.  On that day, ACE registered an approximately 70 percent increase in log-ins as compared with the previous record number of daily log-ins.

4.  As of 8pm eastern time on Sunday, April 26, 2026, a total of 75,306 CAPE declarations have been submitted, of which a total of 47,315 CAPE declarations passed the file validations.[1]

5.  As of 8pm eastern time on Sunday, April 26, 2026, the CAPE declarations that successfully passed the file validations cover a total of 11,222,927 entries with IEEPA duties that passed the entry-specific validations and were accepted for the removal of IEEPA duties through CAPE.[2]  As of this same time, a total of 2,124,394 entries that

---

[1] Please refer to ¶3.a of my declaration filed March 12, 2026, also included as Exhibit C to my declaration filed April 14, 2026, ECF 15, for a description of the file validations performed by the CAPE functionality after a CAPE Declaration is submitted.

[2] Please refer to ¶3.b of my declaration filed March 12, 2026, also included as Exhibit C to my declaration filed

2

were included on CAPE declarations that passed the file validations were rejected for failing the entry-specific validations.

6. Out of the 11,222,927 accepted entries that passed the entry-specific validations, approximately 1,740,000 entries have been liquidated and are in the refund process as of 8pm eastern time on Sunday, April 26, 2026.

7. Overall, as of 8pm eastern time on Sunday, April 26, 2026, the CAPE functionality is working successfully. Since the opening of CAPE on April 20, 2026, the only time during which the CAPE functionality was not available for use by importers and their brokers was an 18-minute period on April 20, 2026, when CBP briefly paused the ability to submit declarations to reconfigure resources and optimize the processing of CAPE declarations. CBP will continue to monitor and address any issues as they arise, to ensure that CAPE continues to function as intended.

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 28th day of April, 2026.

Brandon Lord
Executive Director
Trade Programs
Office of Trade
U.S. Customs and Border Protection

---

April 14, 2026, ECF 15, for a description of the entry-specific validations performed by the CAPE functionality after a CAPE Declaration successfully passes the file validations.

3

A45

UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————— :
                                                :
EURO-NOTIONS FLORIDA, INC.,                     :
                                                :
            Plaintiff,                          :
                                                :        Before: Richard K. Eaton, Judge
            v.                                   :
                                                :        Court No. 25-00595
U.S. CUSTOMS AND BORDER                         :
PROTECTION; RODNEY S. SCOTT, in                 :
his official capacity as Commissioner of        :
U.S. Customs and Border Protection;             :
and the UNITED STATES,                          :
                                                :
            Defendants.                         :
                                                :
———————————————————— :

**ORDER**

At a closed conference held on April 14, 2026, U.S. Customs and Border Protection ("Customs") confirmed that it is on track to launch Phase 1 of its Consolidated Administration and Processing of Entries ("CAPE") capability to refund International Emergency Economic Powers Act ("IEEPA") duties with interest on April 20, 2026. To that end, on April 10, 2026, Customs published instructions regarding CAPE Phase 1. A link to Customs' instructions will be available on this Court's website. It is worth noting that the instructions do not limit the use of CAPE to those claimants who have commenced an action in this Court.

Importers should be aware that, by voluntarily using CAPE, any IEEPA cash deposits will be available to offset amounts owed with respect to other duties. Customs will provide a method for identifying entries for which an adjustment has been made.

The court and participants also discussed the Declaration of Brandon Lord, Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection, dated April 14, 2026 (ECF No. 15), which states, among other things, that 56,497 importers of record or

**A46**

their designees have completed the process to receive electronic refunds for all of their IEEPA entries. If all of those who have registered for electronic refunds take advantage of CAPE for all their entries, the result would be refunds of approximately $127 billion.

Also, the court notes that nothing has been filed under seal in *Atmus Filtration, Inc. v. United States* (1:26-cv-01259-RKE), since March 11, 2026, and nothing has been filed under seal in *Euro-Notions Florida, Inc. v. United States* (1:25-cv-00595-RKE). It is not anticipated that anything will be filed under seal in this case in the future.

Now therefore, upon consideration of Mr. Lord's Declaration, and the papers and proceedings had herein, it is hereby

**ORDERED** that Defendant shall file, by 12:00 p.m. EDT on Tuesday, April 28, 2026, a report on the progress made in Phase 1. A closed settlement conference will be held in person and via Webex at 2:00 p.m. the same day.

<div style="text-align:right">
_____/s/ Richard K. Eaton_____
Judge
</div>

Dated: April 14, 2026
      New York, New York

<div style="text-align:center">A47</div>

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

| | |
|---|---|
| EURO-NOTIONS FLORIDA, INC.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection,<br><br>　　　　　Defendants. | Court No. 25-00595 |

**DECLARATION OF BRANDON LORD**
**RESPONDING TO APRIL 8, 2026 COURT ORDER**

I, Brandon Lord, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since July 2022.   In my role, I lead CBP's strategic efforts to enforce and protect the revenue, including the implementation of tariff measures under Section 232 of the Trade Expansion Act of 1962 and the International Emergency Economic Powers Act (IEEPA).   I lead the administration of priority international trade issues, including Tariffs and Trade Remedies, Intellectual

1

**A48**

Property Rights, Free Trade Agreements, Import Safety, Textiles and Antidumping and Countervailing Duties.  Previously, I served as the Acting Executive Director for Trade Policy and Programs, Office of Trade, from March 2021 until November 2021, and as the Deputy Executive Director for Trade Policy and Programs, Office of Trade, from November 2017 until July 2022.

2. CBP is developing a new capability within its system of record for imported merchandise — the Automated Commercial Environment (ACE) — to prepare to calculate and provide valid refunds of additional *ad valorem* duties imposed under IEEPA.  This new ACE functionality is called the Consolidated Administration and Processing of Entries (CAPE).  CBP is designing CAPE with four integrated components:

- Claim Portal,

- Mass Processing,

- Review and Liquidation/Reliquidation, and

- Refund

Please refer to my declaration filed March 12, 2026,[1] for a description of each component.  The overall status of CBP's development of CAPE along with component-specific development is discussed below.

**OVERALL CAPE DEVELOPMENT STATUS**

3. As of April 14, 2026, CBP has completed the primary development of all components and functionalities for CAPE Phase 1.  The agency has transitioned to an intensive testing

---

[1] All of my prior declarations pertaining to CBP's refund of IEEPA duties filed in *Atmus Filtration, Inc. v. United States*, 1:26-cv-01259-RKE, accompany this declaration as exhibits.  My declaration filed on March 4, 2026 (ECF 19), is attached as Exhibit A.  My declaration filed on March 6, 2026 (ECF 31), is attached as Exhibit B.  My declaration filed on March 12, 2026 (ECF 39), is attached as Exhibit C.  My declaration filed on March 19, 2026 (ECF 47), is attached as Exhibit D.  My declaration filed on March 31, 2026 (ECF 51) is attached as Exhibit E.

2

**A49**

posture, focused on performance and scenario-based testing of all CAPE components and the remediation of any defects identified during testing.

    a.  CBP estimates that its overall development, including testing, of the Claim Portal component is 95% complete.

    b.  CBP estimates that its overall development, including testing, of the Mass Processing component is 85% complete. Since March 30, 2026, CBP has completed development of the capabilities and revised parameters described in my declaration filed on March 31, 2026, attached as Exhibit E, and has shifted its focus to performance and scenario-based testing of this component.

    c.  CBP estimates that its overall development, including testing, of the Review and Liquidation/Reliquidation component is 90% complete.

    d.  CBP estimates that its overall development, including testing, of the Refund component is 90% complete.

### ELECTRONIC REFUND ENROLLMENT

4. As I explained in my declaration filed on March 31, 2026, attached as Exhibit E, CBP's systems are designed to issue refunds to the importer of record (IOR) or a party the IOR has designated to receive refunds on its behalf on a CBP Form 4811 ("4811 Designee"). As of February 6, 2026, those refunds are issued electronically in accordance with Executive Order 14247, *Modernizing Payments To and From America's Bank Account*, 90 Fed. Reg. 14,001 (Mar. 25, 2025) and CBP's January 2, 2026, Interim Final Rule. I further explained that CBP continues to issue messaging to the trade community regarding this new requirement and to provide information about how to complete the process to receive electronic refunds.

5. As of April 9, 2026, 56,497 IORs have either completed the process to receive electronic

<div align="center">3</div>

<div align="center">

**A50**

</div>

refunds for all of their IEEPA entries or a 4811 Designee has done so on behalf of the IOR for all of the IOR's IEEPA entries. Additional entities (IORs and 4811 Designees) continue to complete the process to receive electronic refunds daily.

6.  In total, refunds can be issued electronically for approximately 82% of entries with IEEPA duty payments and/or duty deposits. The principal amount of IEEPA duty payments and/or duty deposits for these entries is approximately $127 billion.

## PRE-LIQUIDATION REFUNDS

7. The agency continues to consider options for pre-liquidation refunds for suspended entries subject to antidumping and/or countervailing duty (AD/CVD) orders.

8. CBP's standard refund process is largely automated and occurs at liquidation, allowing both principal and interest to be refunded together, after accounting for any offsets to satisfy open bills. Conversely, pre-liquidation refunds, also known as administrative refunds, occur prior to liquidation, require manual processing, and are limited to the principal amount, because, pursuant to 19 U.S.C. § 1505(c), interest cannot be refunded until liquidation. The administrative refund process requires CBP to manually adjust the collection record in ACE, move funds to suspense accounts, and generate manual refunds.

9. Approximately 166,000 entry summaries subject to AD/CVD orders have been filed, with $2.9 billion of IEEPA duties paid on the entries. To issue administrative refunds for these entries, the manual refund process described in paragraph 8 would need to be repeated for each entry individually, dramatically increasing the workload and diverting personnel from fully carrying out the agency's commercial trade operations and trade enforcement mission.

**A51**

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 14th day of April, 2026.

Brandon Lord
Executive Director
Trade Programs
Office of Trade
U.S. Customs and Border Protection

# <u>Exhibit A</u>

**A53**

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

|  |  |
|---|---|
| ATMUS FILTRATION, INC.,<br><br>                    Plaintiff,<br><br>     v.<br><br>UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION; AND RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection<br><br>                    Defendants. | Court No. 26-01259 |

### DECLARATION OF BRANDON LORD<br>IN RESPONSE TO THE COURT'S<br>QUESTIONS OF MARCH 3, 2026

I, Brandon Lord, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since July, 2022. In my role, I lead CBP's strategic efforts to enforce and protect the revenue, including the implementation of tariff measures under Section 232 of the Trade Expansion Act of 1962 and the International Emergency Economic Powers Act. I lead the administration of priority international trade issues, including Tariffs and Trade Remedies, Intellectual Property

**A54**

Rights, Free Trade Agreements, Import Safety, Textiles and Antidumping and Countervailing Duties. Previously, I served as the Acting Executive Director for Trade Policy and Programs, Office of Trade, from March 2021 until November 2021, and as the Deputy Executive Director for Trade Policy and Programs, Office of Trade, from November 2017 until July 2022.

2. This declaration is made to respond to the questions issued by the Court of International Trade in this action on March 4, 2026, as follows:

a) *Is the estimated number of entries that have been made since duties were first imposed pursuant to the International Emergency Economic Powers Act ("IEEPA") materially greater or less than the number of entries made during the twelve months preceding the imposition of IEEPA duties?*

Response: The number of entries filed since IEEPA duties were first imposed is greater than the number of entries filed during the twelve months preceding the imposition of IEEPA duties. From February 2024 to February 2025, a total of 39,134,522 entries were filed. From February 2025 to February 2026, a total of 71,647,732 entries were filed.

b) *Is U.S. Customs and Border Protection ("Customs") currently liquidating entries with duties imposed pursuant to IEEPA?*

Response: Yes, for those entries where IEEPA duties were declared at entry, CBP is liquidating those entries with duties imposed pursuant to IEEPA.

c) *Has Customs issued refunds of IEEPA duties as the result of liquidations that have taken place since the Supreme Court's decision in Learning Resources, Inc. v. Trump, 2026 WL 477534 (U.S. Feb. 20, 2026)?*

<div align="center">2</div>

<div align="center">**A55**</div>

Response: No, CBP has not issued refunds of IEEPA duties as the result of liquidations that have taken place since the Supreme Court's decision.

*d) Have instructions been issued to Customs officers instructing them to liquidate unliquidated entries without IEEPA duties?*

Response: No, CBP has not issued instructions directing our employees to liquidate entries without IEEPA duties.

*e) Is it Customs' position that, with respect to entries that are liquidated without IEEPA duties, the importers of record will be sent a refund in an amount equal to the IEEPA duties plus interest?*

Response: There are several factors which inform the answer to this question, including but not limited to entry type.  In accordance with applicable law, any validated refund of IEEPA duties would include interest. Regardless of entry type and liquidation cycle, CBP still requires a review period to ensure no violation of other Customs laws and no other duties, taxes, or fees are owed (e.g., anti-dumping, Sec. 301 duties, Sec. 232, etc.).

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 4th day of March, 2026.

Brandon Lord
Executive Director
Trade Programs
Office of Trade
U.S. Customs and Border Protection

3

**A56**

# <u>Exhibit B</u>

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

ATMUS FILTRATION, INC.,

              Plaintiff,

    v.

UNITED STATES, U.S. CUSTOMS AND
BORDER PROTECTION; AND RODNEY
S. SCOTT, in his official capacity as
Commissioner of U.S. Customs and Border
Protection

              Defendants.

Court No. 26-01259

## DECLARATION OF BRANDON LORD

I, Brandon Lord, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since July 2022.   In my role, I lead CBP's strategic efforts to enforce and protect the revenue, including the implementation of tariff measures under Section 232 of the Trade Expansion Act of 1962 and the International Emergency Economic Powers Act.   I lead the administration of priority international trade issues, including Tariffs and Trade Remedies, Intellectual Property

A58

Rights, Free Trade Agreements, Import Safety, Textiles and Antidumping and Countervailing Duties. Previously, I served as the Acting Executive Director for Trade Policy and Programs, Office of Trade, from March 2021 until November 2021, and as the Deputy Executive Director for Trade Policy and Programs, Office of Trade, from November 2017 until July 2022.

## FRAMEWORK FOR ENTRY AND LIQUIDATION

2. In general, in accordance with the applicable statutory and regulatory legal framework, importers are required to deposit estimated duties on each entry of imported merchandise at the time the merchandise is entered into the United States or shortly thereafter. Thereafter, CBP is required to "liquidate" each entry, which entails fixing the final amount of duty owed. If CBP does not liquidate an entry within one year of entry (with certain prescribed exceptions), it will liquidate by operation of law at the rate and amount of duties asserted by the importer at the time of entry; this is referred to as "deemed liquidation." To mitigate the risk of deemed liquidation, which may result in an underpayment of duties, taxes and fees lawfully owed for the entry, since the entry will liquidate at the rate of duty, value, quantity, and amount of duties asserted by the importer of record without any verification by CBP, CBP's Automated Commercial Environment (ACE) – the system of record for imported merchandise – is programmed to automatically liquidate entries 314 days after the date of entry into the United States, unless liquidation is extended or suspended in accordance with law, or a CBP user manually removes the entry from this automated process. Given the volume of entries made each year, CBP is unable to affirmatively review and liquidate each entry, and the majority of entries automatically liquidate. After an entry is liquidated, CBP has the statutory authority to reliquidate the entry within 90 days of the original liquidation to fix any errors in the liquidation.

2

**A59**

Case 1:25-cv-05250-RMB  Document 15-12  Filed 06/27/2026  Page 4 of 13

3. In general, upon liquidation or reliquidation, CBP is required to collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation.

4. CBP's system for processing and liquidating entries is ACE. ACE is the system through which the trade community submits required data regarding imports and exports to CBP and its partner federal government agencies. ACE is CBP's system of record for the collection and refund, as appropriate, of estimated or assessed duty for imported merchandise, which includes the ACE Entry Summary module, for processing entry summaries to assess duties on the merchandise, and the ACE Collections module, for processing the collection and refund (as appropriate) of duties or estimated duty deposits associated with the entry summaries in the ACE Entry Summary module.

5. ACE contains multiple applications with different functionalities that are designed to account for critical processes. These processes are intentionally handled by different personnel categories within CBP to ensure that statutory and regulatory requirements are met and that all duties, taxes, and fees have been paid. ACE is further designed to implement various system controls and validations to ensure that the Agency fulfills its mandate to protect the revenue while also protecting national security and processing lawful international trade.

6. The majority of import entries are filed electronically using ACE, although a small number of entries are still filed using paper forms. For entries filed using paper, CBP manually inputs the data into ACE. Accordingly, ACE contains all import entry records, whether the entry was originally filed using ACE or paper forms. No duty calculation adjustments or refunds are performed in paper format – only electronically in ACE.

**A60**

7. Importers declare the duties owed for imported merchandise on Entry Summary lines in the entry covering the merchandise. This is in accordance with the applicable legal framework for the entry of imported merchandise, including CBP's instructions for the Entry Summary Form 7501, which apply to entries filed in ACE as well as on paper. Entries often have multiple Entry Summary lines, generally averaging approximately 20.5 Entry Summary lines per entry. An Entry Summary line covers a commodity from one country, and includes the quantity, entered value, relevant Harmonized Tariff Schedule of the United States (HTSUS) provisions, and all charges, rate(s) of duty, and tax applicable to such merchandise.

8. For each Entry Summary line, importers must report all applicable HTSUS provisions. This means that, in addition to including the Chapter 1-97 regular duty rate classification, importers must also report any applicable Chapter 99 provisions for any additional duties owed, including IEEPA duties, and those imposed pursuant to Section 232 of the Trade Expansion Act of 1962 and/or Sections 201 and/or 301 of the Trade Act of 1974, or applicable exclusions from these additional duties, as well as any applicable antidumping or countervailing duties (AD/CVD) or duty deposits owed. Therefore, if multiple HTSUS provisions apply to the imported merchandise that is reported on a given Entry Summary line, all such HTSUS provisions are reported on the same line, and all associated duties are deposited together for the merchandise covered by a particular Entry Summary line.

9. For AD/CVD duties, CBP administers orders and instructions from the Department of Commerce ("Commerce") related to such duties. Generally, importers are required to declare that their merchandise is subject to AD/CVD, and the liquidation of AD/CVD entries is automatically suspended in ACE until CBP receives AD/CVD liquidation instructions from Commerce. When CBP receives AD/CVD liquidation instructions

4

**A61**

from Commerce, CBP must liquidate such entries within six months after receiving the notice of removal of the suspension or otherwise the entries will be liquidated by operation of law at the rate and amount of duty asserted by the importer. Given the volume and complexity of AD/CVD instructions that CBP is required to process – for example, in fiscal year 2025, CBP reviewed and processed over 2,264 separate Commerce AD/CVD instructions – it is often the case that entries subject to AD/CVD are processed and finalized for liquidation close to the expiration of the six-month deadline.

10. If it is determined upon liquidation or reliquidation that excess moneys have been deposited, such that a refund with interest is due to the importer, CBP certifies the refund and interest amounts to the Department of the Treasury, which then employs its own processes to disburse the certified amounts to the importers of record.

## THE COURT OF INTERNATIONAL TRADE'S
## MARCH 5, 2026, AMENDED ORDER

11. For the reasons explained below, CBP is not able to comply with the Court of International Trade's order of March 4, 2026, "that, with respect to any and all unliquidated entries that were entered subject to the IEEPA duties, U.S. Customs and Border Protection [must] liquidate those entries without regard to the IEEPA duties," and that "[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to IEEPA duties." Although this declaration was prepared based on the Court's March 4, 2026 order, the same considerations apply with regard to the Court's amended order of March 5, 2026, which ordered that "with respect to any and all unliquidated entries that were entered subject to the IEEPA duties imposed by the Executive Orders considered by the Supreme Court in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026), U.S. Customs and Border Protection [must] liquidate those entries without regard to the IEEPA

5

**A62**

duties," and that "[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties."

12. As of March 4, 2026, over 330,000 importers have made a total of over 53 million entries in which they have deposited or paid duties imposed pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq. (the "subject entries"). As of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. Approximately 20.1 million entries remain unliquidated as of March 4, 2026.

13. Currently, it is not possible for CBP to immediately prevent any additional entries from liquidating without IEEPA duties. CBP automatically liquidates formal entries in ACE each Friday, starting at 02:00 AM ET. This liquidation process in ACE runs several hours during the middle of the night so as not to slow down international cargo processing. Over 700,000 entries were scheduled to liquidate at 2:00 AM ET Friday, March 6, 2026, of which CBP identified approximately 339,000 entries that include IEEPA duties. Approximately 333,000 additional entries that include IEEPA duties are scheduled to liquidate at 2:00 AM ET Friday, March 13, 2026.

14. To stop the liquidation of formal entries with IEEPA duties that are already scheduled to liquidate, CBP would need to manually extend the liquidation date or would need to reprogram ACE to stop the liquidation of all entries scheduled to liquidate. CBP does not have the capability of separating out which entries scheduled to liquidate are subject to IEEPA duties from those that are not for purposes of stopping the liquidation process in ACE that is scheduled to run at 2:00 AM ET Friday, March 6, 2026. However, if CBP were to stop the scheduled liquidation of all the more than 700,000 entries, then some of those entries (approximately 1,000) would miss their liquidation deadline, and

6

**A63**

would be liquidated by operation of law at the rate and amount of duty asserted by the importer of record (see paragraph 9 above), which in some cases may be contrary to AD/CVD liquidation instructions or other provisions of law.

15. In addition to formal entries, there are also informal entries filed pursuant to the special entry procedures provided in subpart C of part 143 of the Customs Regulations in Title 19 of the Code of Federal Regulations. Informal entries liquidate immediately upon the importer paying the duties due on the entry. 19 C.F.R. § 159.10(a)(1). Of the 53,173,939 entries filed with IEEPA duties, 33,730,325 or 63% are informal entries. Although CBP stopped accepting IEEPA duty deposits for informal entries on February 24, 2026, there are around 4 million informal entries that were filed before February 24, 2026, that have not yet liquidated. Many of these entries will automatically liquidate on March 16, 2026, when importers pay their March Periodic Monthly Statement. CBP does not have a process to prevent the liquidation of informal entries.

16. CBP has also identified over 15 million entries that liquidated with IEEPA duties on or before December 4, 2025, meaning that they were beyond CBP's 90-day voluntary reliquidation period at the time of the Court's March 4, 2026 order. However, for approximately 63,059 of these entries, the 90-day period expired on March 4, 2026. For an additional approximately 75,614 entries, the 90-day period will expire on March 12, 2026, the day before the next scheduled liquidation/reliquidation date of next Friday, March 13, 2026.

## USING CBP'S EXISTING CAPABILITIES
## TO PROCESS IEEPA DUTY REFUNDS

17. In light of the Court's March 5, 2026 amended order, CBP is now facing an unprecedented volume of refunds. Its existing administrative procedures and technology

7

**A64**

are not well suited to a task of this scale and will require manual work that will prevent personnel from fully carrying out the agency's trade enforcement mission. Personnel would be redirected from responsibilities that serve to mitigate imminent threats to national security and economic security. Those activities include, but are not limited to, detecting and disrupting transshipped goods, protecting against free trade agreement abuse, and detecting AD/CVD evasion all of which are illicit actions that threaten U.S. domestic industry.

18. Although CBP's instructions for the Entry Summary Form 7501 direct importers to breakout the applicable duties for each HTSUS classification that is declared for the same merchandise on the same Entry Summary line (to include Chapter 99 numbers), importers frequently combine all applicable duties into the Chapter 1-97 HTSUS classification. As a result, for some entries, the Entry Summary records do not clearly reflect the precise amount of duties that were deposited specifically for IEEPA HTSUS provisions and not for any other HTSUS provision that is also applicable to the same merchandise on the same Entry Summary line. Because importers have flexibility in reporting applicable duties at the Entry Summary line level and the deposit of duties is accepted at the Entry Summary level, isolating the IEEPA duties from the other duties deposited for the Entry Summary requires manual calculations by CBP personnel who must then manually update each individual Entry Summary line to remove the IEEPA tariff to ensure correct duty amounts are applied. Only then would ACE be able to reassess the proper duty owed and issue a refund of the IEEPA duties paid.

19. Currently, ACE can support large scale uniform changes of the same data element(s) across a group of Entry Summaries. However, current system limitations allow CBP to process a maximum of 10,000 Entry Summary lines in one submission. Additionally, the

8

**A65**

mass processing function requires CBP personnel to manually compile Excel spreadsheets that identify batches of subject entries. To mass process the removal of the hundreds of HTSUS numbers for IEEPA duties from entries, CBP would need to manually execute approximately 170,000 mass update actions to cover the 1,684,648,252 Entry Summary lines that need to be updated. Additionally, it is not uncommon for this mass processing operation to kick out (or fail to process) entries with anomalies that need to be individually evaluated and addressed, adding an unquantifiable amount of time given the unprecedented magnitude of this effort.

20. In addition to refunding the IEEPA duties, CBP must also pay importers interest, as required by law. Although ACE can automatically calculate interest payments in certain circumstances, there are other circumstances where interest must be manually calculated by CBP personnel. These circumstances include Entry Summaries for which duty deposits and/or non-IEEPA refunds were made on multiple dates, resulting in multiple collection records for the Entry Summary, such as when an importer submits a correction after making its initial estimated duty deposit, which results in a supplemental duty deposit.

21. The current system requires refunds be certified for accuracy by personnel from both CBP's Office of Field Operations and Office of Finance, separately, before submission to the Department of the Treasury for issuance. Assuming each Entry Summary with IEEPA tariffs is entitled to a refund, then 53,173,939 refunds would need to go through this process. There is no workaround in ACE that would allow this process to be circumvented.

22. CBP published the Interim Final Rule (IFR) Electronic Refunds (91 FR 21), stating that effective February 6, 2026, CBP will issue all refunds electronically. Yet, many

9

**A66**

importers have not taken the necessary steps to receive refunds electronically. Pursuant to the IFR, all CBP refunds have been electronic as of February 6, 2026. There are 330,566 importers who have paid IEEPA duties or duty deposits. While CBP has issued numerous communications regarding the new rule, only 21,423 entities (mostly importers or their customs brokers) have completed the set-up process to receive their refunds electronically. Until importers complete the process to receive refunds electronically, the refunds will be rejected. Since February 6, 2026, CBP has been unable to process 7,700 refunds for 2,897 importers because those importers had not completed the necessary steps to receive refunds electronically.

23. CBP's Import Specialists (IS) and Entry Specialists (ES) are responsible for the processing of all entries of imported merchandise and related corrections, enforcement actions, and administrative protests. For example, CBP Entry Specialists are required by law or policy to perform approximately 20 separate functions daily related to entry processing, revenue protection and enforcement, as well as approximately 15 additional functions weekly, and approximately 10 additional functions monthly.

24. Once the review of an entry is complete and any manual duty calculations completed (see paragraph 18 above), it takes an IS or ES approximately 5 minutes to process an individual refund, including amending, liquidating and certifying the refund for each entry. The refund processing for the 53,173,939 entries with IEEPA duties will require 4,431,161 man hours for CBP to complete.

25. It is not feasible for CBP to divert all IS and ES personnel to processing IEEPA duty refunds on a full-time basis with no time off. If CBP's IS and ES personnel were diverted to focus full-time on processing IEEPA duty refunds for the millions of entries and Entry Summary lines on which IEEPA duties have been paid, CBP's other functions

10

**A67**

and responsibilities would be severely disrupted and the agency would not be able to continue to adequately perform its mission, including its revenue protection mandate and its vital national security functions.

26.  CBP has never been ordered to, nor has it attempted to, process a volume of refunds anywhere near the volume of total entries and Entry Summary lines on which IEEPA duties have been deposited.  However, where CBP's predecessor, the U.S. Customs Service, was previously ordered to refund to exporters the Harbor Maintenance Fee (HMF) that was held to have been unconstitutionally imposed as applied to exports by the Supreme Court in *United States Shoe Corporation v. United States* (1998), the process took several years to complete and required an updated regulatory procedure.

**DEVELOPMENT OF NEW FUNCTIONALITY IN ACE**

27. CBP has a history of developing effective processes to meet its legal responsibilities and operational needs that also provide efficiencies for industry, and we continue to do so now.  In preparing for the potential need to refund IEEPA duties, CBP has considered how to implement a process to issue IEEPA duty refunds in a more efficient manner than the above-described, currently available processes.  CBP is confident that it can develop and implement new ACE functionality that will streamline and consolidate refunds and interest payments on an importer basis, rather than issuing 53,173,939 separate entry-specific refunds with multiple payments going to the same importer.   Though operational, legal, and technical considerations may require alterations or modifications, CBP anticipates that the process will involve the following steps:

- The importer files a declaration in ACE that includes a list of entries on which IEEPA duties were paid.
- ACE runs a series of validations on each entry within the declaration and

11

**A68**

automatically re-calculates the duty owed without the IEEPA tariffs (with applicable interest).

- CBP verifies the declaration and processes refunds as soon as practicable.

- ACE automatically finalizes (liquidates or reliquidates) the entries.

- ACE automatically aggregates the refunds with interest by importer and liquidation date.

- CBP certifies the refunds.

- The Department of the Treasury issues IEEPA refunds electronically.

28. CBP estimates that the automated controls described above will save CBP over 4 million hours compared with the manual processes it would otherwise have to complete.

29. CBP is making all possible efforts to have this new ACE functionality ready for use in 45 days. This new process will require minimal submission from importers. It will also minimize errors by ensuring accurate IEEPA refund calculations through system validations and allowing for a review period for CBP to resolve any discrepancies with the importer and to confirm no other outstanding enforcement issues or no revenue is owed. The process will be simpler and more efficient than the existing functionalities, and CBP will provide guidance on how to file to refund declarations in the new system.

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 6th day of March, 2026.

Brandon Lord
Executive Director
Trade Programs
Office of Trade
U.S. Customs and Border Protection

13

**A70**

# <u>Exhibit C</u>

**A71**

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

ATMUS FILTRATION, INC.,

                Plaintiff,

    v.

UNITED STATES, U.S. CUSTOMS AND
BORDER PROTECTION; and RODNEY S.
SCOTT, in his official capacity as
Commissioner of U.S. Customs and Border
Protection,

                Defendants.

Court No. 26-01259

## DECLARATION OF BRANDON LORD
## RESPONDING TO MARCH 6, 2026 COURT ORDER

I, Brandon Lord, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since July 2022.   In my role, I lead CBP's strategic efforts to enforce and protect the revenue, including the implementation of tariff measures under Section 232 of the Trade Expansion Act of 1962 and the International Emergency Economic Powers Act (IEEPA).   I lead the administration of priority international trade issues, including Tariffs and Trade Remedies, Intellectual

1

Property Rights, Free Trade Agreements, Import Safety, Textiles and Antidumping and Countervailing Duties. Previously, I served as the Acting Executive Director for Trade Policy and Programs, Office of Trade, from March 2021 until November 2021, and as the Deputy Executive Director for Trade Policy and Programs, Office of Trade, from November 2017 until July 2022.

2. CBP is developing a new capability within its system of record for imported merchandise — the Automated Commercial Environment (ACE) — to prepare to calculate and provide valid refunds of additional *ad valorem* duties imposed under IEEPA. This new ACE functionality is called the Consolidated Administration and Processing of Entries (CAPE). CBP is designing CAPE with four integrated components:

- Claim Portal,
- Mass Processing,
- Review and Liquidation/Reliquidation, and
- Refund

These components reflect both how CBP anticipates refund requests will proceed through CAPE and how CBP is structuring its development efforts. Each of these components, along with an update on its development, is discussed below.

## CLAIM PORTAL

3. The CAPE Claim Portal will be web-based and serve as the entry point for importers and brokers to submit IEEPA refund requests ("CAPE Declaration") to CBP. Once operational, a new tab will be available in both importer and broker ACE Portal accounts. Filers will not use Automated Broker Interface (ABI) to file in the CAPE Claim Portal. Filers will be able to upload a Comma-Separated Values (CSV) file containing a list of the entry summaries for which they are requesting IEEPA refunds. After submission,

2

**A73**

ACE will conduct two series of validations: 1) file validations and 2) entry validations.

    a.  File validations will ensure that the refund request contains all required information, that the information is properly formatted, that the submitter is the importer of record (IOR) for the listed entries or the authorized broker that filed the entry summaries on the IOR's behalf, and that the CSV file itself is not corrupted. If a submission fails any part of the file validation series, ACE will reject the CAPE Declaration submission. The system will identify the specific errors that triggered the rejection, which filers will be able to view in ACE, allowing filers to correct the identified issues and resubmit the request on a new CAPE Declaration.

    b.  If the CAPE Declaration submission successfully passes the file validations, ACE will proceed to a set of entry-specific validations. For example, the system will confirm that an entry summary number listed in the submitted CSV file exists in ACE and that at least one IEEPA Harmonized Tariff Schedule (HTS) Chapter 99 number was declared on that entry. If an entry summary fails any of the entry-specific validations, ACE will remove that individual entry summary from the CAPE Declaration but will continue processing the remaining entry summaries listed. After the system completes the entry-specific validations, ACE will allow the filer to review the results and identify any rejected entries. If it is possible for the filer to correct any of the entry-specific errors ACE identified, it may do so on a separate CAPE Declaration upload.

4.  As of March 11, 2026, CBP estimates that its development of the Claim Portal component is 70% complete. CBP has finished developing the Claim Portal user

**A74**

interface and is currently developing the programming necessary to run the automated validations described above and provide information about validation errors to the CAPE Declaration filer.

## MASS PROCESSING

5. The CAPE Mass Processing component will automatically remove any applicable IEEPA HTS numbers from the entry summaries submitted to and validated by the CAPE Claim Portal component. After the IEEPA HTS numbers are removed, the Mass Processing component runs the ACE duty calculation validations. These checks are the normal ACE entry summary process that exists today, which automatically reviews all declared HTS numbers to confirm the correct duties owed are listed on the entry summary. At this point, the Mass Processing component calculates duties as if the IEEPA duties had never been declared. After the CAPE Declaration has passed through the Mass Processing component, the system accepts the CAPE Declaration.

6. As of March 11, 2026, CBP estimates that its development of the Mass Processing component is 40% complete. CBP's development efforts are currently focused on the automated entry summary update process and related validations.

## REVIEW AND LIQUIDATION/RELIQUIDATION

7. The next CAPE component will initiate the review and liquidation/reliquidation process for the entries identified in the accepted CAPE Declaration. This component will automatically set the entries to liquidate/reliquidate on a specified number of days from the acceptance date, allowing CBP to conduct a manual review as needed. CBP is developing additional functionality within this CAPE component to streamline any required agency review. The Review and Liquidation/Reliquidation component will update the underlying entry summaries to reflect the new total duties paid and will

4

**A75**

automatically calculate interest. It will also process liquidations/reliquidations of entries on a CAPE Declaration Monday through Thursday each week.

8.  As of March 11, 2026, CBP estimates that its development of the Review and Liquidation/Reliquidation component is 80% complete. CBP has completed developing the liquidation/reliquidation function of this component and will shortly begin performance testing. CBP is also planning additional development and testing for this component, but these are dependent on the development progress of other CAPE components.

**REFUND**

9.  When the entry summaries in the accepted CAPE Declaration reach the scheduled liquidation/reliquidation date, ACE will direct those entries to a CAPE-specific refund process within the ACE Collections refunds module. The CAPE Refund component will consolidate refunds by liquidation/reliquidation date and IOR or a party the IOR has designated to receive refunds on its behalf on a CBP Form 4811 ("Form 4811 designee"). Once processed, the refunds will be sent electronically to the designated bank account.

10. As of March 11, 2026, CBP estimates that its development of the Refund component is 60% complete. CBP has completed developing CAPE-specific refund processing functionality within the ACE Collections framework. Currently, CBP is performance testing the CAPE refund consolidation process. CBP plans to complete additional development to further integrate the component with the other CAPE components and conduct additional performance testing in the next few weeks.

**PHASED DEVELOPMENT**

11. CBP anticipates a phased development for CAPE, beginning with the basic functionality outlined above, and adding more functionality in subsequent phases to address more

5

**A76**

complicated scenarios. CBP expects that in its first phase of development, CAPE will be able to process the majority of formal and informal entries on which IEEPA duties were paid, other than unliquidated entries subject to antidumping or countervailing duties, or entries for which the liquidation status in ACE is "Suspended," "Extended," or "Under Review," and certain other entry types such as warehouse withdrawals, entries designated on a drawback claim, etc. CBP will provide detailed guidance to users regarding the scope and functionality of each phase of development as it is implemented. CBP is also evaluating any additional steps that may need to be taken to comply with the Paperwork Reduction Act.

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 12th day of March, 2026.

Brandon Lord
Executive Director
Trade Programs
Office of Trade
U.S. Customs and Border Protection

6

**A77**

# Exhibit D

**A78**

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

ATMUS FILTRATION, INC.,

               Plaintiff,

    v.

UNITED STATES, U.S. CUSTOMS AND
BORDER PROTECTION; and RODNEY S.
SCOTT, in his official capacity as
Commissioner of U.S. Customs and Border
Protection,

               Defendants.

Court No. 26-01259

## DECLARATION OF BRANDON LORD
### RESPONDING TO MARCH 12, 2026 COURT ORDER

I, Brandon Lord, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since July 2022.   In my role, I lead CBP's strategic efforts to enforce and protect the revenue, including the implementation of tariff measures under Section 232 of the Trade Expansion Act of 1962 and the International Emergency Economic Powers Act (IEEPA).   I lead the administration of priority international trade issues, including Tariffs and Trade Remedies, Intellectual

1

Property Rights, Free Trade Agreements, Import Safety, Textiles and Antidumping and Countervailing Duties.  Previously, I served as the Acting Executive Director for Trade Policy and Programs, Office of Trade, from March 2021 until November 2021, and as the Deputy Executive Director for Trade Policy and Programs, Office of Trade, from November 2017 until July 2022.

2.  CBP is developing a new capability within its system of record for imported merchandise — the Automated Commercial Environment (ACE) — to prepare to calculate and provide valid refunds of additional *ad valorem* duties imposed under IEEPA.  This new ACE functionality is called the Consolidated Administration and Processing of Entries (CAPE).  CBP is designing CAPE with four integrated components:

- Claim Portal,

- Mass Processing,

- Review and Liquidation/Reliquidation, and

- Refund

Please refer to my declaration filed March 12, 2026 (ECF 39) for a description of each component.  The status of CBP's development for each component is discussed below.

**CLAIM PORTAL**

3.  As of March 19, 2026, CBP estimates that its development of the Claim Portal component is 73% complete.

4.  CBP has been conducting tests on the substantially-developed capabilities of the Claim Portal component.  As with any new functionality that CBP develops for ACE, the new CAPE components must go through multiple rounds of critical testing before deployment to the live ACE environment.  As CBP gets closer to full development of each component, its focus will increasingly be on this necessary testing.

2

**A80**

**MASS PROCESSING**

5. As of March 19, 2026, CBP estimates that its development of the Mass Processing component is 45% complete. Since March 12, 2026, CBP has continued developing two critical functions within this component: 1) ACE validations, and 2) event history tracking.

6. ACE validations are part of the normal ACE entry summary process and will ensure that the automated entry summary updates are processed correctly. The validation function of the Mass Processing component of CAPE will identify entry summaries that cannot be fully processed in Phase 1 of CAPE due to requirements external to the IEEPA refund process, such as those subject to an antidumping or countervailing duty (AD/CVD) order where the Department of Commerce has instructed CBP to suspend liquidation.

7. CBP is developing an event history tracking function within this component that will record new events as entry summaries are processed. This will ensure that the agency maintains a robust and well-structured audit trail on entry summaries updated through this process.

8. Within the next week, CBP plans to complete the remaining validations, begin testing of the Mass Processing component, and address any issues found in testing.

**REVIEW AND LIQUIDATION/RELIQUIDATION**

9. As of March 19, 2026, CBP estimates that its development of the Review and Liquidation/Reliquidation component is 80% complete. Since March 12, 2026, CBP has begun testing the liquidation/reliquidation function of this component. CBP plans to complete additional development and testing for this component, but these are dependent on the development progress of other CAPE components.

**A81**

## REFUND

10. As of March 19, 2026, CBP estimates that its development of the Refund component is 63% complete. CBP has completed development of a CAPE-specific refund processing functionality within the ACE Collections framework. Since March 12, 2026, CBP has conducted testing for the refund consolidation functionality, which will consolidate refunds by liquidation/reliquidation date and importer of record (IOR) or a party the IOR has designated to receive refunds on its behalf.

11. Within the next week, CBP will continue developing and testing additional capabilities to support the refund consolidation functionality.

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 19th day of March, 2026.

Brandon Lord
Executive Director
Trade Programs
Office of Trade
U.S. Customs and Border Protection

4

A82

# Exhibit E

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

ATMUS FILTRATION, INC.,

          Plaintiff,

    v.

UNITED STATES, U.S. CUSTOMS AND
BORDER PROTECTION; and RODNEY S.
SCOTT, in his official capacity as
Commissioner of U.S. Customs and Border
Protection,

          Defendants.

Court No. 26-01259

**DECLARATION OF BRANDON LORD**
**RESPONDING TO MARCH 20, 2026 COURT ORDER**

    I, Brandon Lord, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection (CBP), a position I have held since July 2022. In my role, I lead CBP's strategic efforts to enforce and protect the revenue, including the implementation of tariff measures under Section 232 of the Trade Expansion Act of 1962 and the International Emergency Economic Powers Act (IEEPA). I lead the administration of priority international trade issues, including Tariffs and Trade Remedies, Intellectual

1

**A84**

Property Rights, Free Trade Agreements, Import Safety, Textiles and Antidumping and Countervailing Duties. Previously, I served as the Acting Executive Director for Trade Policy and Programs, Office of Trade, from March 2021 until November 2021, and as the Deputy Executive Director for Trade Policy and Programs, Office of Trade, from November 2017 until July 2022.

2. CBP is developing a new capability within its system of record for imported merchandise — the Automated Commercial Environment (ACE) — to prepare to calculate and provide valid refunds of additional *ad valorem* duties imposed under IEEPA. This new ACE functionality is called the Consolidated Administration and Processing of Entries (CAPE). CBP is designing CAPE with four integrated components:

- Claim Portal,

- Mass Processing,

- Review and Liquidation/Reliquidation, and

- Refund

Please refer to my declaration filed March 12, 2026 (ECF 39), for a description of each component. The status of CBP's development for each component is discussed below.

### CLAIM PORTAL

3. As of March 30, 2026, CBP estimates that its development of the Claim Portal component is 85% complete.

4. Since my last declaration on March 19, 2026 (ECF 47), CBP has completed the majority of core development for the Claim Portal component and continues to conduct critical testing to identify and address any development or programming issues.

2

**A85**

## MASS PROCESSING

5.  As of March 30, 2026, CBP estimates that its development of the Mass Processing component is 60% complete.

6.  Since my last declaration on March 19, 2026, CBP has significantly developed capabilities necessary to process entry summaries identified on a CAPE Declaration in the Mass Processing component. These capabilities include the ability for CBP to review and adjudicate a CAPE Declaration, and the ability to modify entry summaries, as required. CBP continues to enhance the history tracking function, described in my previous declaration. CBP is also finalizing development of the ACE validations described in my declarations dated March 12 and 19, 2026.

## MASS PROCESSING—REVISED PARAMETERS

7.  To ensure compliance with the Court's amended order dated March 20, 2026, CBP revised the development of CAPE Phase 1 to limit the processing of entries to those that are either unliquidated or for which the 90-day voluntary reliquidation period under 19 U.S.C. § 1501 has not expired. On March 27, 2026, the Court further amended its order to provide that "[a]ny liquidated entries for which liquidation is final shall be reliquidated without regard to the IEEPA duties." In order to meet the timeline for Phase 1 deployment set forth in my declaration of March 6, 2026 (ECF 31), CBP must continue developing Phase 1 of CAPE without the inclusion of finally liquidated entries. Accordingly, Phase 1 will only process unliquidated entries and entries within the 90-day voluntary reliquidation period, subject to the conditions set forth in paragraphs 14 and 15 of this declaration. As I explain in paragraph 16 below, CBP intends to expand CAPE to process finally liquidated entries in a subsequent phase of development.

3

**A86**

8.  CBP estimates that, subject to the limitations set forth in paragraph 7, Phase 1 of CAPE will be capable of processing approximately 63% of entries for which IEEPA duties were paid or have been deposited.  This percentage includes unliquidated entries and entries within the 90-day voluntary reliquidation period set forth in 19 U.S.C. § 1501.

## REVIEW AND LIQUIDATION/RELIQUIDATION

9.  As of March 30, 2026, CBP estimates that its development of the Review and Liquidation/Reliquidation component is 80% complete.  CBP continues to test the liquidation/reliquidation function of this component using various scenarios that may be presented by entry summaries identified on a CAPE Declaration.  The remainder of the development and testing for this component is dependent on the development of other CAPE components.

## REFUND

10. As of March 30, 2026, CBP estimates that its development of the Refund component is 75% complete.  Since my last declaration on March 19, 2026, CBP has completed the majority of the development of the Refund component required for Phase 1 of CAPE, and the agency's focus in this component has shifted to the critical testing required before deployment to ACE. In the coming weeks, CBP will continue the critical testing, identifying and addressing any issues revealed by the testing, and expanding that testing as necessary.

11. CBP's systems are designed to allow refunds to be issued to the importer of record (IOR) or a party the IOR has designated to receive refunds on its behalf on a CBP Form 4811. On March 25, 2025, President Trump issued Executive Order 14247, *Modernizing*

4

**A87**

*Payments To and From America's Bank Account*, 90 Fed. Reg. 14,001 (Mar. 25, 2025), mandating the transition from paper checks to electronic payments for all Federal disbursements and receipts by digitizing payments to the extent permissible under applicable law, with limited exceptions and accommodations when electronic payment methods are not feasible. As noted in my March 6, 2026 declaration, on January 2, 2026, CBP published in the Federal Register an Interim Final Rule (IFR) providing that, effective February 6, 2026, CBP will issue refunds electronically, as required by Executive Order 14247. The IFR explains that Section 3332(f)(1) of title 31 of the United States Code (31 U.S.C. § 3332(f)(1)) generally mandates that all Federal payments made by the government, other than payments made under the Internal Revenue Code of 1986, be made by electronic funds transfer. It further explains that the definition of "Federal payments" in 31 U.S.C. § 3332(j)(3) is inclusive of refunds such as those issued by CBP, although the requirement for electronic funds transfers may be waived in cases where compliance imposes a hardship or in other circumstances as may be necessary. Consistent with this statutory authority and the Executive Order, the IFR provides that all CBP refunds have been electronic as of February 6, 2026.

12. CBP continues to issue messaging to the trade community to inform it of the new electronic refund requirement and provide information about how to complete the process to receive electronic refunds.

13. As of March 26, 2026, 26,664 IORs have completed the process to receive electronic refunds, and additional entities continue to complete the process daily. These 26,664 IORs filed 78% of entries for which IEEPA duty payments and/or duty deposits have been paid. The principal amount of IEEPA duty payments and/or duty deposits for these entries is approximately $120 billion.

5

**A88**

**PHASE ONE OF CAPE DEVELOPMENT**

14. In my March 12, 2026 declaration I explained that CBP anticipated a phased development of CAPE and outlined the anticipated scope and functionality of Phase 1 of CAPE.  Since that declaration, CBP has been able to expand the scope and functionality of Phase 1 of CAPE as follows:

a. CAPE Phase 1 will now accept CAPE Declarations containing entries for which the liquidation status is "Suspended," "Extended," or "Under Review." The Mass Processing component of CAPE will update these entries by removing the Harmonized Tariff Schedule of the United States (HTS) code requiring IEEPA duties and will recalculate the duties owed without IEEPA duties.  However, CAPE will not liquidate or process the refund of the IEEPA duties on these entries, which will be liquidated (without IEEPA duties) in the normal course, and the IEEPA duties will be refunded upon liquidation. Entries subject to antidumping and/or countervailing duties (AD/CVD) are included in this scenario if their liquidation is suspended pending instructions from the U.S. Department of Commerce (DOC).  Entries subject to AD/CVD will be accepted on a CAPE Declaration and the IEEPA duties will be removed, but CBP will not liquidate or process the refund of the IEEPA duties until it receives instructions from DOC to lift the suspension and liquidate the entries.

b. CAPE Phase 1 will now also accept CAPE Declarations containing warehouse and warehouse withdrawal entries.  CAPE will remove the IEEPA HTS codes for warehouse and warehouse withdrawal entries, but will not liquidate or

6

**A89**

process the refund of the IEEPA duties on these entries. Instead, the liquidation process for warehouse entries will continue to be performed by CBP in the normal course after all withdrawals have been made and the warehouse entry is ready for liquidation, at which time CBP will process the refund of IEEPA duties.

CBP does not expect the expansions outlined above to delay its delivery of Phase 1 of CAPE.

15. In addition, further clarifications to my March 12, 2026 declaration are as follows:

    a. The following categories of entries subject to IEEPA duties will <u>not</u> be accepted on a CAPE Declaration in Phase 1:

- Entries that have been flagged for reconciliation, as well as Entry Type 09 – Reconciliation Summary;

- Entries designated on a drawback claim;

- Entries covered by an open protest;

- Entries not filed in ACE, and entries without a liquidation status in ACE; and

- Entries subject to AD/CVD, for which DOC has issued liquidation instructions, that are pending liquidation in accordance with 19 U.S.C. § 1504(d).

    b. CBP will take up to 45 days from its acceptance of a CAPE Declaration to review and liquidate the validated entry summaries identified on the CAPE Declaration, unless there is a compliance concern necessitating further review.

    c. CAPE Phase 1 will accept CAPE Declarations containing entries liquidated within the preceding 80 days to ensure that processing is complete and the

<div align="center">7</div>

<div align="center">**A90**</div>

entries are reliquidated by the 90th day to meet the agency's legal timeframe for voluntary reliquidation pursuant to 19 U.S.C. § 1501.

## DEVELOPMENT OF SUBSEQUENT PHASES OF CAPE

16. CBP continues to identify and evaluate more complex refund scenarios and determine what additional CAPE capabilities are necessary to address those scenarios.  At this time, CBP expects to develop the following functionalities in subsequent phases of CAPE:

  a.  Enhanced tools and validations to ensure compliance, facilitate entry summary processing, and expedite CBP's review process;

  b.  Enhanced financial reporting and security tools;

  c.  Tools to further streamline revenue enforcement in situations in which there is an outstanding bill for non-IEEPA duties associated with an entry included on a CAPE Declaration;

  d.  The capability to process entries flagged for reconciliation and entries designated on drawback claims, which pose an enhanced risk of over-refunding the duties;

  e.  The capability to process complex interest calculations related to multiple collection dates on a single entry summary included on a CAPE Declaration;

  f.  The capability to process entries for which liquidation is final; and

  g.  The capability to process non-Automated Broker Interface entries where no entry summary lines exist.

17. CBP will provide additional information about how it intends to address these scenarios. CBP will also provide guidance regarding the scope and functionality of the subsequent phases of CAPE as they are developed and implemented.

8

**A91**

A92

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 30th day of March, 2026.

Brandon Lord
Executive Director
Trade Programs
Office of Trade
U.S. Customs and Border Protection

**A92**

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

ATMUS FILTRATION, INC.,  :

                   Plaintiff,  :

            v.  :

UNITED STATES,  :

                  Defendant.  :

_____

:
:
:
:
:
:
:
:
:
:

Before: Richard K. Eaton, Judge

Court No. 26-01259

## <u>**ORDER**</u>

At the settlement conference held on March 31, 2026, the court and the participants discussed questions related to the refund of International Emergency Economic Powers Act ("IEEPA") duties through U.S. Customs and Border Protection's ("Customs") proposed Consolidated Administration and Processing of Entries ("CAPE") functionality in its ACE system.

As an initial matter, Customs confirmed that it is on track to meet the April 20, 2026, deadline to begin accepting CAPE Declarations for entries that are eligible for liquidation or reliquidation and certification for refunds in Phase 1.

The Declaration of Brandon Lord, Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection, dated March 31, 2026, ECF No. 51 ("Lord Decl."), was reviewed at the conference. Customs continues to make satisfactory progress on developing each of the four components of CAPE: (1) the Claim Portal, (2) Mass Processing, (3) Review and Liquidation / Reliquidation, and (4) Refund.

Once Phase I of CAPE is completed, Customs "expects to develop" additional "functionalities" so that CAPE will be able to address "more complex refund scenarios." Lord Decl. ¶ 16.

**A93**

As Customs continues to develop CAPE to address importer concerns, it will take into consideration: (1) pre-liquidation refunds for suspended entries, (2) entries that are not processed through CAPE, and (3) entries that have been liquidated and are outside the 180-day protest window.

Additionally, the court notes that Customs now issues all refunds electronically. Lord Decl. ¶ 11. The court therefore encourages importers and any designated third parties to consult Customs' guidance on enrollment in the electronic ACH Refund program. *See, e.g.*, *Electronic Refunds*, 91 Fed. Reg. 21 (Dep't of Homeland Sec. Jan. 2, 2026).

Considering that no resolution has been reached with respect to the reliquidation, by way of CAPE, of entries for which liquidation has become final, importers should be aware of the remedies available under 19 U.S.C. § 1514 (Protest against decisions of Customs Service).

Upon consideration of the papers and proceedings had herein, including Mr. Lord's March 31, 2026, Declaration, it is hereby

**ORDERED** that Defendant shall file a short report describing the progress Customs has made toward the development of a process to issue refunds of IEEPA duties paid with interest. The report shall be filed by 12:00 p.m. EDT on Tuesday, April 14, 2026. A closed conference is scheduled for the same day at 3:00 p.m. EDT. The parties' counsel may appear in person or by video. The court's Case Manager will provide conference details accordingly. This settlement conference will not be open to the public.

                                                    /s/ Richard K. Eaton
                                                            Judge

Dated: April 1, 2026
       New York, New York

**A94**

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| _____ | : | |
| ATMUS FILTRATION, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Before: Richard K. Eaton, Judge |
| v. | : | |
| | : | Court No. 26-01259 |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## **ORDER**

At the settlement conference held yesterday, March 19, 2026, the court stated that it would amend its Amended Order of March 5, 2026 (ECF No. 29), so as to encompass all duties imposed by various Executive Orders pursuant to the International Emergency Economic Powers Act ("IEEPA"), including those imposed on imports from Brazil and India. That amendment is included in this order.

The court and the participants discussed refund questions related to deemed liquidation, reliquidation of entries for which liquidation has become final, and the provision of refunds to those importers who do not take advantage of U.S. Customs and Border Protection's ("Customs") proposed CAPE functionality (i.e., the Consolidated Administration and Processing of Entries) in its ACE system. Considering that no resolution was reached with respect to the reliquidation of entries for which liquidation has become final, importers should be aware of the remedies available under 19 U.S.C. § 1514 (Protest against decisions of Customs Service).

Also discussed at the conference was the Declaration of Brandon Lord, Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection, dated March 19, 2026 (ECF No. 47), which confirms that Customs continues to make satisfactory

**A95**

progress toward the timely completion of a process to issue refunds of IEEPA duties paid with interest.

Accordingly, it is hereby

**ORDERED** that the Amended Order dated March 5, 2026 (ECF No. 29), is further amended so that the ordered paragraph reads: "**ORDERED** that, with respect to any and all unliquidated entries that were entered subject to IEEPA duties, U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties. For the avoidance of doubt, nothing in this order addresses issues concerning duty free de minimis treatment under 19 U.S.C. § 1321 that are otherwise before this Court. *See Axle of Dearborn, Inc. v. Department of Commerce et al.* (1:25-cv-00091-3JP)."; it is further

**ORDERED** that the Amended Order dated March 5, 2026 (ECF No. 29), as amended above, is suspended to the extent that it requires immediate compliance; and it is further

**ORDERED** that Defendant shall file, by 12:00 p.m. EDT on Tuesday, March 31, 2026, a report describing the progress Customs has made toward the completion of a process to issue refunds of IEEPA duties paid with interest. A closed settlement conference will be held via Webex at 2:00 p.m. the same day.

/s/ Richard K. Eaton
Judge

Dated: March 20, 2026
New York, New York

**A96**

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| ATMUS FILTRATION, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Before: Richard K. Eaton, Judge |
| v. | : | |
| | : | Court No. 26-01259 |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER**

Upon consideration of the Declaration of Brandon Lord, Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection ("Customs"), dated March 12, 2026 (ECF No. 39), and in anticipation of the report due on March 19, 2026 (ECF No. 40), it is hereby

**ORDERED** that a closed video conference is scheduled for Thursday, March 19, 2026, at 3:00 p.m. EDT. The court's Case Manager will provide the parties' counsel with details of the video conference. This settlement conference will not be open to the public.

/s/ Richard K. Eaton
Judge

Dated: March 16, 2026
New York, New York

**A97**

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| ATMUS FILTRATION, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Before: Richard K. Eaton, Judge |
| v. | : | |
| | : | Court No. 26-01259 |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **<u>ORDER</u>**

Upon consideration of the Declaration of Brandon Lord, Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection ("Customs"), dated March 12, 2026 (ECF No. 39), which confirms that Customs is making satisfactory progress to timely complete the development of a process to issue refunds of International Emergency Economic Powers Act ("IEEPA") duties paid, with interest; and taking note of Mr. Lord's Declaration of March 6, 2026 (ECF No. 31), in particular paragraph 22, which indicates that the process of issuing refunds can be expedited to those importers who take the necessary steps to receive refunds electronically, as described in Customs' Interim Final Rule on Electronic Refunds (published in the Federal Register on January 2, 2026, at 91 Fed. Reg. 21), it is hereby

**ORDERED** that the suspension of the amended Order dated March 5, 2026 (ECF No. 29), as ordered by the court on March 6, 2026 (ECF No. 33), is continued; and it is further

**A98**

Court No. 26-01259                                                                 Page 2

      **ORDERED** that Defendant shall file, by 2:00 p.m. EDT on Thursday, March 19, 2026, a

short report describing the progress Customs has made toward the development of a process to

issue refunds of IEEPA duties paid with interest.


                                                             /s/ Richard K. Eaton
                                                             Judge

Dated: March 12, 2026
       New York, New York

**A99**

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

                                   :

ATMUS FILTRATION, INC.,             :

                                     :

                Plaintiff,         :

                                     :          Before: Richard K. Eaton, Judge

       v.                              :

                                     :          Court No. 26-01259

UNITED STATES,                  :

                                     :

               Defendant.      :

_____ :

**<u>ORDER</u>**

It is estimated that U.S. Customs and Border Protection ("Customs") has collected approximately $165 billion in duties pursuant to the International Emergency Economic Powers Act ("IEEPA"). These duties must now be refunded with interest, and the clock is ticking. Further interest is accumulating every day, with approximately $650 million accruing per month. If the entries are not liquidated before the end of the year, it is further estimated that $10 billion of interest will have accrued. American taxpayers will bear this financial burden.

The court has read the Declaration of Brandon Lord, Executive Director, Trade Programs Directorate, Office of Trade, U.S. Customs and Border Protection (ECF No. 31), which states that Customs "can develop and implement new . . . functionality" in Customs' Automated Commercial Environment (known as ACE) "that will streamline and consolidate refunds and interest payments on an importer basis" and describes the steps of a simple and efficient process to issue the refunds. Decl. ¶ 27. To ensure the timely development and implementation of the refund process, it is hereby

**A100**

Court No. 26-01259                                                                    Page 2

        **ORDERED** that Defendant shall file a short report describing the progress Customs has made toward the development of a process to issue refunds of IEEPA duties paid with interest. The report shall be filed by 2:00 p.m. EDT on Thursday, March 12, 2026; and it is further

        **ORDERED** that Customs is to provide the information pertaining to Plaintiff's entries immediately, as discussed in today's conference.


                                                          /s/ Richard K. Eaton
                                                                Judge

Dated: March 6, 2026
       New York, New York

**A101**

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| ———————————————— : | |
| EURO-NOTIONS FLORIDA, INC., : | |
| : | |
| Plaintiff, : | |
| : | Before: Richard K. Eaton, Judge |
| v. : | |
| : | Court No. 25-00595 |
| U.S. CUSTOMS AND BORDER : | |
| PROTECTION; RODNEY S. SCOTT, in : | |
| his official capacity as Commissioner of : | |
| U.S. Customs and Border Protection; : | |
| and the UNITED STATES, : | |
| : | |
| Defendants. : | |
| ———————————————— : | |

**ORDER**

Upon consideration of the papers and proceedings had herein, it is hereby

**ORDERED** that this matter is STAYED, except with respect to the court's order (ECF No. 19) that Defendants shall file, by 12:00 p.m. EDT on Tuesday, April 28, 2026, a report on the progress made in Phase 1, and that a closed settlement conference will be held in person and via Webex at 2:00 p.m. the same day.

<div align="right">

__/s/ Richard K. Eaton__
Judge

</div>

Dated: April 20, 2026
      New York, New York

**A102**

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

V.O.S. SELECTIONS, INC.; PLASTIC   :
SERVICES AND PRODUCTS, LLC d/b/a  :
GENOVA PIPE; MICROKITS, LLC;    :
FISHUSA INC.; and TERRY PRECISION  :
CYCLING LLC;                              :
                                :
           Plaintiffs,         :
                                :     Before: Richard K. Eaton, Judge
     v.                        :
                                :     Court No. 25-00066
THE UNITED STATES OF AMERICA;   :
UNITED STATES CUSTOMS AND     :
BORDER PROTECTION; PETE R.      :
FLORES, in his official capacity as    :
Acting Commissioner for United States  :
Customs and Border Protection;     :
JAMIESON GREER, in his official    :
capacity as United States Trade     :
Representative; OFFICE OF THE UNITED :
STATES TRADE REPRESENTATIVE;   :
and HOWARD LUTNICK, in his official  :
capacity as Secretary of Commerce;   :
                                :
          Defendants.       :
_____:

**ORDER**

Upon consideration of the papers and proceedings had herein, it is hereby

**ORDERED** that this matter is STAYED, except with respect to the court's instructions to

counsel that are set forth in its April 17, 2026, order (ECF No. 81) concerning the transmission to

the court, by April 24, 2026, of the names of up to three lawyers to serve as representatives at the

closed settlement conference that is scheduled in *Euro-Notions Florida, Inc. v. United States* (1:25-

**A103**

Court No. 25-00066                                                                Page 2

cv-00595-RKE) for April 28, 2026, at 2:00 p.m. EDT.


                                                                    ___/s/ Richard K. Eaton___
                                                                              Judge

Dated: April 20, 2026
        New York, New York


**A104**

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |  |
|---|---|---|
| V.O.S. SELECTIONS, INC.; PLASTIC SERVICES AND PRODUCTS, LLC d/b/a GENOVA PIPE; MICROKITS, LLC; FISHUSA INC.; and TERRY PRECISION CYCLING LLC; | : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Before: Richard K. Eaton, Judge |
| | : | Court No. 25-00066 |
| THE UNITED STATES OF AMERICA; UNITED STATES CUSTOMS AND BORDER PROTECTION; PETE R. FLORES, in his official capacity as Acting Commissioner for United States Customs and Border Protection; JAMIESON GREER, in his official capacity as United States Trade Representative; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; and HOWARD LUTNICK, in his official capacity as Secretary of Commerce; | : : : : : : : : : : : : : | |
| Defendants. | : : | |

_____

**ORDER**

Upon consideration of the papers and proceedings had herein, it is hereby

**ORDERED** that the stay in this case is lifted *sua sponte*; and it is further

**ORDERED** that counsel shall confer with counsel for plaintiffs in *AGS Company Automotive Solutions v. United States* (1:25-cv-00255-RKE) and *Grant & Bowman, Inc. v. United States* (1:25-cv-00689-RKE), and transmit to the court by April 24, 2026, the names of up to three lawyers to serve as representatives at the closed settlement conference that is scheduled in *Euro-Notions Florida, Inc. v. United States* (1:25-cv-00595-RKE), ECF No. 19, for April 28, 2026, at 2:00 p.m. EDT. The three lawyers will be in addition to counsel for Euro-Notions Florida, Inc.

**A105**

Court No. 25-00066                                                                                          Page 2

and may include lawyers from any of the law firms listed on page 10 of the motion to lift the stay

filed in *AGS Company Automotive Solutions v. United States* (1:25-cv-00255-RKE), ECF No. 40.


                                                                    _____/s/ Richard K. Eaton_____
                                                                                    Judge


Dated: April 17, 2026
         New York, New York


**A106**

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| AGS COMPANY AUTOMOTIVE SOLUTIONS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Before: Richard K. Eaton, Judge |
| Turn5, Inc., et. al., | : | |
| | : | Consol. Court No. 25-00255 |
| Consolidated Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendants. | : | |

**ORDER**

Upon consideration of the papers and proceedings had herein, it is hereby

**ORDERED** that the stay in this case is lifted *sua sponte*; and it is further

**ORDERED** that counsel shall confer with counsel for plaintiffs in *V.O.S. Selections, Inc. v. United States* (1:25-cv-00066-RKE) and *Grant & Bowman, Inc. v. United States* (1:25-cv-00689-RKE), and transmit to the court by April 24, 2026, the names of up to three lawyers to serve as representatives at the closed settlement conference that is scheduled in *Euro-Notions Florida, Inc. v. United States* (1:25-cv-00595-RKE), ECF No. 19, for April 28, 2026, at 2:00 p.m. EDT. The three lawyers will be in addition to counsel for Euro-Notions Florida, Inc. and may include lawyers from any of the law firms listed on page 10 of the motion to lift the stay filed in *AGS Company Automotive Solutions v. United States* (1:25-cv-00255-RKE), ECF No. 40.

           /s/ Richard K. Eaton
                    Judge

Dated: April 17, 2026
     New York, New York

**A107**

UNITED STATES COURT OF INTERNATIONAL TRADE

—————————————————————————
                                                :
GRANT & BOWMAN, INC.,                           :
                                                :
            Plaintiff,                          :
                                                :        Before: Richard K. Eaton, Judge
                                                :
      v.                                        :
                                                :        Court No. 25-00689
                                                :
U.S. CUSTOMS AND BORDER                         :
PROTECTION; RODNEY S. SCOTT, in                 :
his official capacity as Commissioner of        :
U.S. Customs and Border Protection;             :
and the UNITED STATES,                          :
                                                :
            Defendants.                         :
                                                :
—————————————————————————

## ORDER

Upon consideration of Plaintiff's Motion to Lift the Stay, ECF No. 12, it is hereby

**ORDERED** that the motion is granted, and the stay in this case is lifted; and it is further

**ORDERED** that counsel shall confer with counsel for plaintiffs in *V.O.S. Selections, Inc.*

*v. United States* (1:25-cv-00066-RKE) and *AGS Company Automotive Solutions v. United States*

(1:25-cv-00255-RKE), and transmit to the court by April 24, 2026, the names of up to three

lawyers to serve as representatives at the closed settlement conference that is scheduled in

*Euro-Notions Florida, Inc. v. United States* (1:25-cv-00595-RKE), ECF No. 19, for April 28, 2026,

at 2:00 p.m. EDT. The three lawyers will be in addition to counsel for Euro-Notions Florida, Inc.

and may include lawyers from any of the law firms listed on page 10 of the motion to lift the stay

filed in *AGS Company Automotive Solutions v. United States* (1:25-cv-00255-RKE), ECF No. 40.

                                        _____
                                             /s/ Richard K. Eaton
                                                    Judge

Dated: April 17, 2026
       New York, New York

**A108**

UNITED STATES COURT OF INTERNATIONAL TRADE

EURO-NOTIONS FLORIDA, INC.,

             Plaintiff,

      v.

U.S. CUSTOMS AND BORDER
PROTECTION; RODNEY S. SCOTT, in
his official capacity as Commissioner of
U.S. Customs and Border Protection;
and the UNITED STATES,

             Defendants.

             Before: Richard K. Eaton, Judge

             Court No. 25-00595

**ORDER**

Upon consideration of the papers and proceedings had herein, it is hereby

**ORDERED** that the stay in this case is lifted *sua sponte*.

                /s/ Richard K. Eaton
                       Judge

Dated: April 7, 2026
      New York, New York

**A109**

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:     THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| ATMUS FILTRATION, INC. | ) |
| | ) |
| Plaintiff, | )     Court No. 26-01259 |
| | ) |
| v. | ) |
| | ) |
| U.S. CUSTOMS AND BORDER | ) |
| PROTECTION; RODNEY S. SCOTT, in | ) |
| his official capacity as Commissioner of | ) |
| U.S. Customs and Border Protection; and | ) |
| the UNITED STATES OF AMERICA | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**STIPULATION REGARDING THE COURT'S AUTHORITY TO ORDER**

**RELIQUIDATION**

The parties hereby stipulate and agree as follows:

1.     Whereas, in Defendant's Response in Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 14), the Government stated that it does not dispute the Court's authority to order reliquidation of entries subject to now invalidated duties imposed under the International Emergency Economic Powers Act ("IEEPA");

2.     IT IS HEREBY STIPULATED that, consistent with the position taken by the Government in ECF No. 14, and for purposes of this action, the parties agree that the U.S. Court of International Trade possesses authority to order reliquidation of entries assessed with duties imposed under the invalidated IEEPA measures, should such relief be warranted;

**A110**

3.     This stipulation is without prejudice to any other claims, defenses, or arguments of either

party unrelated to the Court's authority to order reliquidation, and shall not be construed as an

admission on any other issue.


Dated: March 3, 2026

COZEN O'CONNOR

/s/ *Claudia Burke*
Deputy Director
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
(202) 353-9063

*Counsel for Defendant*

/s/ *Thomas G. Wallrich*
Thomas G. Wallrich (MN Bar #0213354)
Heather L. Marx (MN Bar #321163)
150 South Fifth Street, Suite 1200
Minneapolis, MN 55402
(612) 260-9002
twallrich@cozen.com
hmarx@cozen.com
Brett Crow (PA Bar#334566)
One Liberty Place, 1650 Market Street Suite 2800
Philadelphia, PA 19103
(215) 821-1754
bcrow@cozen.com

*Counsel for Plaintiff*

**A111**

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | | |
|---|---|---|
| ATMUS FILTRATION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Court No. 26-01259 |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## NOTICE OF WITHDRAWAL OF

## MOTION FOR A TEMPORARY RESTRAINING ORDER

## AND PRELIMINARY INJUNCTION LIMITED TO SUSPENSION OF LIQUIDATION

**PLEASE TAKE NOTICE** that Plaintiff Atmus Filtration, Inc. ("Atmus"), by and through undersigned counsel, in light of the Stipulation Regarding the Court's Authority to Order Reliquidation filed concurrently with this Notice, hereby withdraws its Motion For a Temporary Restraining Order and Preliminary Injunction Limited to Suspension of Liquidation (ECF No. 3) filed on February 27, 2026.

Dated: March 3, 2026

COZEN O'CONNOR

*/s/ Thomas G. Wallrich*
Thomas G. Wallrich (MN Bar #0213354)
Heather L. Marx (MN Bar #321163)

**A112**

150 South Fifth Street, Suite 1200
Minneapolis, MN 55402
(612) 260-9002
twallrich@cozen.com
hmarx@cozen.com
Brett Crow (PA Bar#334566)
One Liberty Place, 1650 Market Street Suite 2800
Philadelphia, PA 19103
(215) 821-1754
bcrow@cozen.com

*Counsel for Plaintiff*

LEGAL\113752004\1

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| *IN RE* TARIFFS COLLECTED IN RELIANCE ON INTERNATIONAL EMERGENCY ECONOMIC POWERS ACT (IEEPA) | Attached Schedule |

### ORDER OF REASSIGNMENT

Pursuant to 28 U.S.C. § 253(c) and Rule 77(e)(4) of the Rules of this Court, it is hereby **ORDERED**:

The cases assigned to the three-judge panel consisting of Judge Gary S. Katzmann, Judge Timothy M. Reif, and Judge Jane A. Restani and listed on the attached Schedule, are reassigned to Judge Richard K. Eaton.   This Order does not apply to *Axle of Dearborn, Inc. v. Department of Commerce et al.* (1:25-cv-00091-3JP).

Dated: March 17, 2026                  /s/ Mark A. Barnett
       New York, New York                       Chief Judge

### ORDER OF STAY

In order to facilitate the administration of cases assigned to me that involve claims arising from, and seeking relief relating to, the imposition of tariffs in reliance on the International Emergency Economic Powers Act, it is hereby

**ORDERED** that the cases listed on the attached Schedule are stayed sua sponte, until further notice; and it is further

**ORDERED** that any party seeking to lift the stay on a case covered by this Order must provide good cause.

Dated: March 17, 2026                  /s/ Richard K. Eaton
       New York, New York                        Judge

**A114**

1

| Schedule | | | | |
|---|---|---|---|---|
| 25-66 | 25-289 | 25-330 | 25-371 | 25-413 |
| 25-77 | 25-290 | 25-331 | 25-372 | 25-414 |
| 25-78 | 25-291 | 25-332 | 25-373 | 25-415 |
| 25-96 | 25-292 | 25-333 | 25-374 | 25-416 |
| 25-240 | 25-293 | 25-334 | 25-375 | 25-417 |
| 25-244 | 25-294 | 25-335 | 25-376 | 25-418 |
| 25-245 | 25-295 | 25-336 | 25-377 | 25-419 |
| 25-246 | 25-296 | 25-337 | 25-378 | 25-421 |
| 25-247 | 25-297 | 25-338 | 25-379 | 25-422 |
| 25-249 | 25-298 | 25-339 | 25-380 | 25-423 |
| 25-251 | 25-299 | 25-340 | 25-382 | 25-424 |
| 25-252 | 25-300 | 25-341 | 25-383 | 25-425 |
| 25-253 | 25-301 | 25-342 | 25-384 | 25-426 |
| 25-254 | 25-302 | 25-343 | 25-385 | 25-427 |
| 25-255 | 25-303 | 25-344 | 25-386 | 25-428 |
| 25-256 | 25-304 | 25-345 | 25-387 | 25-429 |
| 25-257 | 25-305 | 25-346 | 25-388 | 25-430 |
| 25-260 | 25-306 | 25-347 | 25-389 | 25-431 |
| 25-262 | 25-307 | 25-348 | 25-390 | 25-434 |
| 25-263 | 25-308 | 25-349 | 25-391 | 25-435 |
| 25-264 | 25-309 | 25-350 | 25-392 | 25-436 |
| 25-266 | 25-310 | 25-351 | 25-394 | 25-437 |
| 25-267 | 25-311 | 25-352 | 25-395 | 25-438 |
| 25-268 | 25-312 | 25-353 | 25-396 | 25-439 |
| 25-269 | 25-313 | 25-354 | 25-397 | 25-440 |
| 25-270 | 25-314 | 25-355 | 25-398 | 25-441 |
| 25-271 | 25-315 | 25-356 | 25-399 | 25-442 |
| 25-272 | 25-316 | 25-357 | 25-400 | 25-443 |
| 25-274 | 25-317 | 25-358 | 25-401 | 25-444 |
| 25-275 | 25-318 | 25-359 | 25-402 | 25-445 |
| 25-276 | 25-319 | 25-360 | 25-403 | 25-446 |
| 25-277 | 25-320 | 25-361 | 25-404 | 25-447 |
| 25-278 | 25-321 | 25-362 | 25-405 | 25-449 |
| 25-281 | 25-322 | 25-364 | 25-406 | 25-450 |
| 25-283 | 25-323 | 25-365 | 25-407 | 25-452 |
| 25-284 | 25-324 | 25-366 | 25-408 | 25-453 |
| 25-285 | 25-325 | 25-367 | 25-409 | 25-454 |
| 25-286 | 25-326 | 25-368 | 25-410 | 24-455 |
| 25-287 | 25-327 | 25-369 | 25-411 | 25-456 |
| 25-288 | 25-329 | 25-370 | 25-412 | 25-457 |

**A115**

2

| Schedule | | | | |
|---|---|---|---|---|
| 25-458 | 25-513 | 25-565 | 25-614 | 25-655 |
| 25-459 | 25-514 | 25-566 | 25-615 | 25-657 |
| 25-460 | 25-515 | 25-567 | 25-616 | 25-658 |
| 25-461 | 25-516 | 25-568 | 25-617 | 25-659 |
| 25-462 | 25-517 | 25-570 | 25-618 | 25-660 |
| 25-464 | 25-521 | 25-571 | 25-619 | 25-661 |
| 25-465 | 25-522 | 25-572 | 25-620 | 25-662 |
| 25-466 | 25-524 | 25-573 | 25-621 | 25-663 |
| 25-467 | 25-527 | 25-574 | 25-623 | 25-664 |
| 25-468 | 25-528 | 25-576 | 25-624 | 25-665 |
| 25-469 | 25-531 | 25-577 | 25-625 | 25-666 |
| 25-470 | 25-532 | 25-578 | 25-626 | 25-668 |
| 25-471 | 25-533 | 25-580 | 25-627 | 25-669 |
| 25-472 | 25-534 | 25-581 | 25-628 | 25-670 |
| 25-474 | 25-535 | 25-583 | 25-629 | 25-671 |
| 25-475 | 25-536 | 25-584 | 25-630 | 25-672 |
| 25-477 | 25-537 | 25-585 | 25-631 | 25-673 |
| 25-480 | 25-538 | 25-586 | 25-632 | 25-674 |
| 25-481 | 25-539 | 25-587 | 25-633 | 25-676 |
| 25-482 | 25-541 | 25-588 | 25-634 | 25-677 |
| 25-483 | 25-542 | 25-589 | 25-635 | 25-678 |
| 25-484 | 25-543 | 25-590 | 25-636 | 25-679 |
| 25-487 | 25-544 | 25-591 | 25-637 | 25-680 |
| 25-488 | 25-545 | 25-592 | 25-638 | 25-681 |
| 25-490 | 25-546 | 25-594 | 25-639 | 25-682 |
| 25-491 | 25-547 | 25-595 | 25-640 | 25-683 |
| 25-492 | 25-548 | 25-600 | 25-641 | 25-685 |
| 25-493 | 25-549 | 25-601 | 25-642 | 25-687 |
| 25-494 | 25-550 | 25-602 | 25-643 | 25-688 |
| 25-495 | 25-551 | 25-603 | 25-644 | 25-689 |
| 25-496 | 25-552 | 25-604 | 25-645 | 25-690 |
| 25-497 | 25-553 | 25-605 | 25-646 | 25-691 |
| 25-500 | 25-554 | 25-606 | 25-647 | 25-692 |
| 25-504 | 25-555 | 25-607 | 25-648 | 25-693 |
| 25-507 | 25-557 | 25-608 | 25-649 | 25-695 |
| 25-508 | 25-558 | 25-609 | 25-650 | 25-698 |
| 25-509 | 25-560 | 25-610 | 25-651 | 25-699 |
| 25-510 | 25-561 | 25-611 | 25-652 | 25-700 |
| 25-511 | 25-562 | 25-612 | 25-653 | 25-701 |
| 25-512 | 25-564 | 25-613 | 25-654 | 25-702 |

**A116**

3

| Schedule | | |
|---|---|---|
| 25-703 | 25-758 | 25-846 |
| 25-705 | 25-759 | 25-847 |
| 25-707 | 25-760 | 25-850 |
| 25-708 | 25-761 | 25-851 |
| 25-709 | 25-762 | 25-853 |
| 25-711 | 25-763 | |
| 25-714 | 25-764 | |
| 25-715 | 25-765 | |
| 25-716 | 25-766 | |
| 25-718 | 25-767 | |
| 25-719 | 25-768 | |
| 25-721 | 25-769 | |
| 25-722 | 25-770 | |
| 25-723 | 25-771 | |
| 25-725 | 25-772 | |
| 25-726 | 25-773 | |
| 25-727 | 25-774 | |
| 25-728 | 25-775 | |
| 25-729 | 25-777 | |
| 25-731 | 25-778 | |
| 25-732 | 25-780 | |
| 25-733 | 25-781 | |
| 25-734 | 25-782 | |
| 25-735 | 25-783 | |
| 25-736 | 25-784 | |
| 25-738 | 25-785 | |
| 25-741 | 25-786 | |
| 25-742 | 25-787 | |
| 25-743 | 25-788 | |
| 25-744 | 25-790 | |
| 25-745 | 25-791 | |
| 25-746 | 25-792 | |
| 25-747 | 25-801 | |
| 25-749 | 25-805 | |
| 25-750 | 25-808 | |
| 25-751 | 25-834 | |
| 25-753 | 25-835 | |
| 25-755 | 25-837 | |
| 25-756 | 25-838 | |
| 25-757 | 25-839 | |

**A117**

IN THE UNITED STATES COURT
OF INTERNATIONAL TRADE

Before Honorable Gary S. Katzmann, Judge, Honorable
Timothy M. Reif, Judge, Honorable Jane A. Restani, Judge

|  |  |
|---|---|
| V.O.S. SELECTIONS, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Case No. 25-00066-GSK-TMR-JAR |

**Proposed Order**

Upon consideration of V.O.S. Selections, Inc., Plastic Services and Products, LLC d/b/a Genova Pipe, MicroKits LLC, FishUSA Inc., and Terry Precision Cycling LLC (collectively, "Plaintiffs")'s Motion for Permanent Injunctive Relief, and after due deliberation, it is hereby:

ORDERED that Plaintiffs' Motion for Permanent Injunctive Relief is granted; and it is further

ORDERED that the operation of all tariffs imposed under the International Emergency Economic Powers Act, Pub. L. No. 95-223, Tit. II, 91 Stat. 1626 (50 U.S.C. § 1701 et seq.) (IEEPA), be permanently enjoined; and it is further
ORDERED that within 10 calendar days, Defendants shall issue all necessary administrative orders to effectuate the permanent injunction, including the issuance of any administrative orders necessary to promptly refund all tariffs paid, with interest, under IEEPA.

**A118**

Dated: _____          _____
                           JUDGE, United States Court of International Trade

Case Case 26-1046-3J Document 2 Page: Filed 02/14/206/02/2026 of 18

**A119**

IN THE UNITED STATES COURT
OF INTERNATIONAL TRADE

Before Honorable Gary S. Katzmann, Judge, Honorable
Timothy M. Reif, Judge, Honorable Jane A. Restani, Judge

| | |
|---|---|
| V.O.S. SELECTIONS, INC., *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.,*<br><br>Defendants. | Case No. 25-00066-GSK-TMR-JAR |

**Plaintiffs' Motion for Permanent Injunctive Relief**

In accordance with rules 7 and 65 of the Rules of the United States Court of International Trade, Plaintiffs V.O.S. Selections, Inc., Plastic Services and Products LLC d/b/a Genova Pipe, MicroKits LLC, FishUSA Inc., and Terry Precision Cycling LLC move for an order permanently enjoining Defendants from enforcing any tariffs imposed under the International Emergency Economic Powers Act, Pub. L. No. 95-223, Tit. II, 91 Stat. 1626 (50 U.S.C. § 1701 et seq.) (IEEPA); and requiring Defendants to issue the necessary administrative orders to effectuate the permanent injunction and to issue refunds, with interest, of tariffs paid pursuant to IEEPA.

Plaintiffs request that this Court issue the following relief:

(A) issue an order permanently enjoining the operation of all tariffs imposed under IEEPA;

(B) issue an order requiring the government to issue all necessary administrative orders to effectuate the permanent injunction, including the administrative

1

**A120**

orders necessary to promptly refund all tariffs paid, with interest, under IEEPA;

(C) award attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and any other applicable law; and

(D) grant other relief as this Court may deem just or proper.

Permanent injunctive relief is necessary in light of the existential threat that the IEEPA tariffs have posed to Plaintiffs. Thus, as soon as the Federal Circuit grants the motion to issue the mandate that Plaintiffs have simultaneously filed in the Federal Circuit, Plaintiffs respectfully request that this Court set a briefing schedule and hearing for this motion at the Court's earliest convenience.

In support, Plaintiffs rely upon their Complaint and the following Memorandum.

**A121**

Dated: February 24, 2026

Respectfully submitted,

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal
Colleen E. Roh Sinzdak
Milbank LLP
1101 New York Ave. NW
Washington, DC 20005
202-835-7505
nkatyal@milbank.com
crohsinzdak@milbank.com

Jeffrey M. Schwab
Reilly W. Stephens
James McQuaid
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
rstephens@ljc.org
jmcquaid@ljc.org

*Counsel for Plaintiffs V.O.S. Selections, Inc., Plastic Services and Products LLC d/b/a Genova Pipe, MicroKits LLC, FishUSA Inc., and Terry Precision Cycling LLC*

3
**A122**

# Table of Contents

Memorandum in Support of Plaintiffs' Motion for
Permanent Injunctive Relief ...................................................................... 1

I.      This Court should grant permanent injunctive relief
against the enforcement of tariffs imposed under IEEPA ................................ 3

II.     This Court should grant permanent injunctive relief that
enforces Defendants' stipulation that they would pay
IEEPA tariff refunds.................................................................................. 4

Conclusion .................................................................................................. 8

Certificate of Compliance

Certificate of Service

## Table of Authorities

**Cases**

*AGS Co. Auto. Sols.* v. *CBP*,
--- F. Supp. 3d ---, 2025 WL 3634261
(Ct. Int'l Trade Dec. 15, 2025).................................................................................. 5

*eBay Inc.* v. *MercExchange, L.L.C.*,
547 U.S. 388 (2006) .................................................................................................... 3

*Learning Res., Inc.* v. *Trump*,
607 U.S. ---, 2026 WL 477534 (U.S. Feb. 20, 2026)................................................. 1

*New Hampshire* v. *Maine*,
532 U.S. 742 (2001) .................................................................................................... 5

*Trump* v. *CASA, Inc.*,
606 U.S. 831 (2025) .................................................................................................... 3

*U.S. Shoe Corp.* v. *United States*,
22 C.I.T. 880 (1998) .................................................................................................... 7

*United States* v. *U.S. Shoe Corp.*,
523 U.S. 360 (1998) .................................................................................................... 7

*V.O.S. Selections, Inc.* v. *Trump*,
149 F.4th 1312 (Fed. Cir. 2025) ........................................................................... 1, 3

**Rules & Regulations**

*Amended Procedure for Refunds of Harbor Maintenance Fees Paid
on Exports of Merchandise*,
Fed. Reg. 16,854 (Mar. 28, 2001) .......................................................................... 7

Executive Order 14,389, *Ending Certain Tariff Actions*,
Federal Register (Feb. 24, 2026),
https://public-inspection.federalregister.gov/2026-03832.pdf............................ 3, 4

**Other Authorities**

*In re: Procedures for Entering a Stay in New IEEPA Tariff Cases*,
Admin. Order 25-02 (Ct. Int'l Trade Dec. 23, 2025)........................................... 5, 6

**A124**

*'It is not up to me': Secretary Bessent pushes back against tariff refunds*,
  CNN (Feb. 22, 2026), https://www.cnn.com/2026/02/22/politics/video
  /treasury-secretary-scott-bessent-tariff-revenue-gorsuch-scotus-
  opinion-congress ................................................................................................ 6

Alan Rappeport and Colby Smith, *Supreme Court Tariff Ruling to Spur
  Chaotic Refund Process*,
  N.Y. Times (Feb. 20, 2026),
  https://www.nytimes.com/2026/02/20/business/supreme-court-tariffs-
  refunds.html .................................................................................................... 6

**A125**

IN THE UNITED STATES COURT
OF INTERNATIONAL TRADE

Before Honorable Gary S. Katzmann, Judge, Honorable
Timothy M. Reif, Judge, Honorable Jane A. Restani, Judge

| | | |
|---|---|---|
| V.O.S. SELECTIONS, INC., *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.,*<br><br>Defendants. | | Case No. 25-00066-GSK-TMR-JAR |

**Memorandum in Support of Plaintiffs' Motion for Permanent Injunctive Relief**

On February 20, 2026, the Supreme Court entered judgment in this case, holding that the International Emergency Economic Powers Act ("IEEPA") does not authorize the President to impose tariffs, and it affirmed the Federal Circuit's decision invalidating the tariffs President Trump had imposed under IEEPA through various executive orders. *Learning Res., Inc.* v. *Trump*, 607 U.S. ---, 2026 WL 477534, at *13-14 (U.S. Feb. 20, 2026). The Federal Circuit's decision, in turn, affirmed the judgment of this Court that the President's IEEPA tariffs were unlawful, but it also vacated the injunctive relief this Court had imposed and remanded so that the Court could reconsider the propriety of "granting injunctive relief and the proper scope of such relief." *V.O.S. Selections, Inc.* v. *Trump*, 149 F.4th 1312, 1340 (Fed. Cir. 2025). Remand proceedings did not immediately follow, however, because the Federal Circuit stayed its mandate pending the Supreme Court's judgment, and provided that

1
**A126**

no further proceedings should occur in this Court until the Federal Circuit's mandate issued. *V.O.S. Selections, Inc.* v. *Trump*, No. 25-1812, Dkt. No. 161 at 3 (Fed. Cir. June 10, 2025).

Now that the Supreme Court has entered its judgment, Plaintiffs have moved the Federal Circuit to issue its mandate in accordance with the terms of its stay, and—as soon as that occurs—Plaintiffs respectfully request that this Court initiate proceedings to enter injunctive relief vindicating the Supreme Court's judgment and the government's oft-repeated stipulation that it would provide refunds to plaintiffs once the tariffs were held unlawful.

Plaintiffs are small businesses that have been paying the exceedingly burdensome tariffs for almost a full year, and who have suffered the dire financial consequences of those tariff payments. It is therefore past time for Plaintiffs to receive the permanent injunction preventing any further imposition of unlawful IEEPA tariffs and requiring the government to issue the refunds that it has committed to provide.

Moreover, this Court's prompt action in this case will facilitate the prompt payment of refunds to the numerous other plaintiffs that have filed and will file IEEPA tariff challenges in this Court. Over 900 of those claims are currently stayed pending final resolution of this case, and the refund process in this case can be used as a template for providing swift relief in those other actions as well.

**I.    This Court should grant permanent injunctive relief against the enforcement of tariffs imposed under IEEPA.**

After this Court first issued its judgment in this case, the government challenged the scope of the injunction against the operation of the IEEPA tariffs before the Federal Circuit.  That Court declined to hold that the original injunction was improperly broad, but it found that the Court should reconsider the propriety of its injunctive relief in light of *Trump* v. *CASA, Inc.*, 606 U.S. 831 (2025), and the four-factor standard for injunctive relief articulated in *eBay Inc.* v. *MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  See *V.O.S. Selections*, 149 F.4th at 1340.  The Court therefore vacated the portions of the judgment concerning injunctive relief and remanded for this Court to reconsider the scope of the injunction.  *Id.*

Because the Supreme Court has now held the IEEPA tariffs invalid, and the Supreme Court's decisions are obviously applicable nationwide, that Court's judgment renders the parties' dispute about the scope of the injunction largely academic.  Regardless of whether this Court's permanent injunction against the operation of IEEPA tariffs applies solely to Plaintiffs or nationwide, the government cannot impose IEEPA tariffs on *anyone* without violating the Supreme Court's decision.  Accordingly, Plaintiffs no longer seek to defend the nationwide scope of the injunction.

Plaintiffs do, however, respectfully request that this Court reenter a permanent injunction preventing the government from subjecting them to any unlawful IEEPA tariffs.  Plaintiffs recognize that the President has issued an Executive Order lifting the tariffs the President had previously imposed under

3

**A128**

IEEPA, Executive Order 14,389, *Ending Certain Tariff Actions*, Federal Register (Feb. 24, 2026),[1] but they seek permanent injunctive relief foreclosing any attempt to reimpose IEEPA tariffs through future orders.

**II.** **This Court should grant permanent injunctive relief that enforces Defendants' stipulation that they would pay IEEPA tariff refunds.**

Plaintiffs also respectfully request that this Court enter an order requiring the government to issue the administrative orders necessary to promptly effectuate the invalidation of the IEEPA tariffs—including any administrative orders necessary to ensure that Plaintiffs swiftly receive the refunds, with interest, that the government has committed to provide.

1.      In the proceedings in this case, the government repeatedly stipulated that it would provide refunds to Plaintiffs if the tariffs were ultimately held unlawful. Thus, in seeking a stay pending appeal from this Court, the government stated that "[f]or any plaintiff who is an importer, … plaintiffs will assuredly receive payment on their refund with interest."  Dkt. No. 59 at 8.  Then, in successfully seeking the same relief from the Federal Circuit, the government stipulated that a stay of this Court's permanent injunction "would not cognizably harm plaintiffs" because "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." *V.O.S. Selections*, Dkt. No. 6 at 25 (Fed. Cir. May 29, 2025).  Because the Federal Circuit granted the stay based on the motion with this representation,

---

[1] *Available at* https://public-inspection.federalregister.gov/2026-03832.pdf.

Defendants are now judicially estopped from retracting their stipulation or challenging the injunctive relief necessary to ensure refunds here.

Nor is this case the only one in which the government has made this stipulation. In follow-on suits filed by other plaintiffs seeking the invalidation of IEEPA tariffs and attendant refunds, the government has repeated its stipulation and clarified that it applies to *all* similarly situated plaintiffs. Most notably, in *AGS Co. Automotive Solutions* v. *CBP*, the government opposed plaintiffs' request for a preliminary injunction that would have facilitated the plaintiffs' ability to obtain a refund once the tariffs were found unlawful by the Supreme Court by asserting that the stipulation regarding refunds that the government first made "in April 2025, in the *V.O.S.* litigation" would apply to all plaintiffs. See No. 1:25-cv-255, Dkt. No. 25 at 3 (Ct. Int'l Trade Dec. 11, 2025) (government's opposition to preliminary injunction). The government subsequently reiterated that this stipulation would apply to all "current and future similarly situated plaintiffs." *Id.*, Dkt. No. 34 at 2 (Ct. Int'l Trade Jan. 8, 2026) (government's response to Court's Jan. 8, 2026 letter).

Based on the government's stipulation, this Court denied the requested preliminary injunctive relief in *AGS* and other related cases, observing that the government would be "estoppe[d]" from later disclaiming its stipulation. *AGS Co. Auto. Sols.* v. *CBP*, --- F. Supp. 3d ---, 2025 WL 3634261, at *2 (Ct. Int'l Trade Dec. 15, 2025) (citing *New Hampshire* v. *Maine*, 532 U.S. 742, 749 (2001)). And this Court subsequently issued an administrative order staying all of the other related cases involving similarly situated plaintiffs pending final judgment in *this* case. *In re:*

*Procedures for Entering a Stay in New IEEPA Tariff Cases*, Admin. Order 25-02 (Ct. Int'l Trade Dec. 23, 2025) (staying "unassigned cases and new cases" pending "a final, unappealable decision in <u>V.O.S. Selections, Inc. v. United States</u>").

2.      This Court should therefore issue injunctive relief that vindicates Defendants' stipulation by requiring Defendants to issue the administrative orders necessary to ensure that Plaintiffs promptly receive their refunds and the appropriate interest.  In light of the stipulation, Plaintiffs presume that Defendants will not oppose this Court's issuance of the relief necessary to guarantee Plaintiffs' refunds and interest.  But the Administration's recent public statements suggest that injunctive relief from this Court will be necessary to ensure the government promptly adheres to its commitments to pay.  See *'It is not up to me': Secretary Bessent pushes back against tariff refunds*, at 0:40, CNN (Feb. 22, 2026) (Treasury Secretary Bessent stated that "[t]he Supreme Court remanded [refunds] down to a lower court, and you know, we will follow what they say, but that could be weeks or months when we hear [from] them.");[2] Alan Rappeport and Colby Smith, *Supreme Court Tariff Ruling to Spur Chaotic Refund Process*, N.Y. Times (Feb. 20, 2026) (President Trump stated, " 'Wouldn't you think they would have put one sentence in there saying that keep the money or don't keep the money?' … 'I guess it has to get litigated for the next two years.' ").[3]

---

[2]  *Available at* https://www.cnn.com/2026/02/22/politics/video/treasury-secretary-scott-bessent-tariff-revenue-gorsuch-scotus-opinion-congress.

[3]  *Available at* https://www.nytimes.com/2026/02/20/business/supreme-court-tariffs-refunds.html.

3.      Plaintiffs also recognize that it may be necessary for this Court to fashion a more detailed injunction to ensure that Defendants adopt and implement the most expeditious means of providing accurate refunds and interest payments. That is particularly so because the procedures developed in this case may serve as a template for ensuring expeditious relief in the numerous other current and future cases covered by the government's stipulation.[4]  Plaintiffs are willing to work with this Court and Defendants to fashion such relief in whatever manner this Court deems appropriate.  And this Court may wish to consolidate the other related pending cases with this one to ensure the fair and prompt resolution of all of these IEEPA tariffs claims.

---

[4] This Court employed a similar approach with respect to the challenges to the Harbor Maintenance Fee that culminated in the Supreme Court invalidating the fee as an unconstitutional tax on exports.  *United States* v. *U.S. Shoe Corp.*, 523 U.S. 360 (1998).  As detailed in a subsequent report in the Federal Register, this Court developed a process for ensuring that the unlawfully charged taxes were repaid in the lead case, *U.S. Shoe Corp.* v. *United States*, No. 94-11-00668 (Ct. Int'l Trade), and then applied that process to ensure repayment in the thousands of additional follow-on cases filed in the CIT.  See *Amended Procedure for Refunds of Harbor Maintenance Fees Paid on Exports of Merchandise*, Fed. Reg. 16,854, 16,854 (Mar. 28, 2001); *U.S. Shoe Corp.* v. *United States*, 22 C.I.T. 880 (1998).

## Conclusion

For the reasons set forth herein, Plaintiffs respectfully request that this Court grant their motion for permanent injunctive relief and grant other relief as this Court may deem just or proper.  A proposed order is attached.

Dated: February 24, 2026
                                    Respectfully submitted,

                                    /s/ *Neal Kumar Katyal*
                                    Neal Kumar Katyal
                                    Colleen E. Roh Sinzdak
                                    Milbank LLP
                                    1101 New York Ave. NW
                                    Washington, DC 20005
                                    202-835-7505
                                    nkatyal@milbank.com
                                    crohsinzdak@milbank.com

                                    Jeffrey M. Schwab
                                    Reilly W. Stephens
                                    James McQuaid
                                    Liberty Justice Center
                                    7500 Rialto Blvd.
                                    Suite 1-250
                                    Austin, Texas 78735
                                    512-481-4400
                                    jschwab@ljc.org
                                    rstephens@ljc.org
                                    jmcquaid@ljc.org

                                    *Counsel for Plaintiffs V.O.S. Selections, Inc., Plastic Services and Products, LLC d/b/a Genova Pipe, MicroKits LLC, FishUSA Inc., and Terry Precision Cycling LLC*

8

**A133**

## Certificate of Compliance

I, Neal Kumar Katyal, hereby certify that this motion and memorandum comply with the 14,000-word limitation of the United States Court of International Trade set forth in Standard Chambers Procedure § 2(B)(1) because the motion and memorandum contain 1,964 words total. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this motion.

Dated: February 24, 2026

Respectfully submitted,

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal

*Counsel for Plaintiffs V.O.S. Selections, Inc., Plastic Services and Products, LLC d/b/a Genova Pipe, MicroKits LLC, FishUSA Inc., and Terry Precision Cycling LLC*

**A134**

## Certificate of Service

I, Neal Kumar Katyal, one of the attorneys for Plaintiffs, certify that the foregoing document was filed electronically with the Court's Case Management/ Electronic Case Filing (CM/ECF) system on February 24, 2026. The Court and/or Clerk of Court may serve and give notice to counsel by CM/ECF electronic transmission.

Dated: February 24, 2026        Respectfully submitted,

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal

*Counsel for Plaintiffs V.O.S. Selections, Inc., Plastic Services and Products, LLC d/b/a Genova Pipe, MicroKits LLC, FishUSA Inc., and Terry Precision Cycling LLC*

**A135**